■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v WILLIE SANDERS, Respondent.—Appeal by the People, as limited by their brief, from so much of an order of the Supreme Court, Kings County, entered March 20, 1980, as granted, after a hearing, the defendant's motion to suppress evidence. (We deem the notice of appeal filed by the People to be a premature notice of appeal from the aforesaid order.) Order reversed insofar as appealed from, on the law, motion to suppress denied, and matter remitted to Criminal Term for further proceedings consistent herewith. The defendant was indicted for criminal possession of a weapon in the third degree and criminal possession of a controlled substance in the eighth degree. He moved to suppress both the handgun and the heroin upon which the charges were based. He also sought to exclude evidence of a statement he had made following his arrest. At the pretrial suppression hearing, the People called the arresting officer, Calvin Flannagan, who testified that on Wednesday, July 11, 1979, at approximately 6:00 P.M., he was on patrol at the Pacific Street station of the BMT subway line in Brooklyn when he was approached by the defendant and a woman, later identified as Yvonne Jackson. The defendant asked for directions to Staten Island and, when the officer provided them, the defendant walked downstairs toward the northbound BMT platform. Ms. Jackson, however, remained behind and, after the defendant was out of sight, she said something to the officer. Immediately thereafter, the officer drew his weapon and hurried down the stairs in search of the defendant. At the hearing,

the Assistant District Attorney did not ask the officer to state what Ms. Jackson had told him. When, on cross-examination, defense counsel asked the officer whether he had gone downstairs "based upon" what Ms. Jackson had said, the prosecutor's objection was sustained. When the officer went downstairs, he saw the defendant seated at one end of a bench seat in a train which was then standing with its doors open in the station. Although it was rush hour, the heavy traffic flow was in the other direction, and there were only some two or three other people in the defendant's car. None was seated close to him. When the officer first saw him, the defendant was bending over with his left hand extended and was in the process of straightening up in his seat. As the officer came aboard the train, he saw a gun lying on the floor, approximately 12 inches from the defendant's left foot, at the spot from which the defendant appeared to be withdrawing his hand. The officer immediately said, "don't move or else I'll shoot." He then placed the defendant under arrest, handcuffed him, and recovered the weapon from the floor. When the defendant asked what he was being arrested for, he was told that it was for the possession of the weapon. He replied by saying, "You're not going to put that on me. I've been around." This statement was made before the defendant had been advised of his constitutional rights. Subsequently, as the defendant and Officer Flannagan were being driven to the precinct in a patrol car, the defendant began to squirm and fidget as if he were reaching for something in his back pocket. The officer thereupon seized the defendant's wallet, searched it, and discovered three tin foils containing a white powder which later proved to be heroin. On this evidence, Criminal Term granted the defendant's motion to suppress in its entirety. The court refused to speculate as to what Ms. Jackson might have said to Officer Flannagan to prompt him to pursue the defendant. Indeed, the court later denied the People's request that the hearing be reopened so that such evidence could be placed on the record. Instead, the court assessed the proof as if Officer Flannagan had pursued and approached the defendant without any advance knowledge or information linking him to criminal conduct. In our view, the court did not err in so limiting its review. The issue of probable cause might well have been conclusively and expeditiously resolved had the Assistant District Attorney timely recognized the relevance and admissibility of Yvonne Jackson's statement to the police. The record strongly suggests that Ms. Jackson had accused the defendant of criminal conduct and, as a general rule, information provided by an identified citizen accusing another individual of the commission of a specific crime is sufficient to provide the police with probable cause to arrest. (See, e.g., *People v Moore*, 32 NY2d 67, 71, cert den 414 US 1011; *People v Hyter*, 61 AD2d 990, 991; *People v Crespo*, 70 AD2d 661.) Thus, in the case at bar, Ms. Jackson's statement to Officer Flannagan was highly relevant to the crucial issue of probable cause. And the statement would have been admissible at the hearing even though reported in court by the officer rather than Ms. Jackson herself. In New York, hearsay is admissible at a pretrial suppression hearing to prove a material fact (see CPL 710.60, subd 4). And, in any event, an officer's testimony as to an accusation made to him is not truly hearsay. Although the truth of a citizen's accusation often becomes the central issue at a criminal trial, the same is not true at a pretrial suppression hearing. There, the issue is generally limited to whether the nature of the accusation, and the circumstantial indications of its reliability, were sufficient to justify the

ensuing police conduct. (Cf. *People v Elwell,* 50 NY2d 231; *People v West,* 44 NY2d 656.) Hence, at a suppression hearing, a police officer's testimony as to an accusation made to him is not offered as evidence of the truth of the charge but only of the fact that it was made. Such testimony is not hearsay. (See Richardson, Evidence [Prince, 10th ed], §§ 203, 204.) In the case at bar, therefore, Officer Flannagan's testimony as to the information he received from Yvonne Jackson was admissible. Nevertheless, for reasons of his own, the prosecutor initially chose to withhold such evidence and, although he changed his position only one day after the proceeding concluded, we cannot say that the court abused its discretion in refusing to reopen the hearing after a decision had been rendered. (Cf. *People v Havelka,* 45 NY2d 636; *People v Bryant,* 37 NY2d 208, 211.) Accordingly, we review the evidence, as did the hearing court, without any reference to what might have prompted Officer Flannagan to pursue the defendant onto the subway train. In doing so, we are obliged to comment upon two fundamental errors committed by Criminal Term in reaching its determination. In the course of its decision, the court held that it was the District Attorney who "bears the burden of proof in this preliminary hearing." Such is not the law. Where a defendant contends that he was the victim of an unconstitutional search and seizure, the prosecution has the *burden of production,* requiring that it come forward with evidence of the legality of the police action in the first instance. The *burden of proof,* however, remains with the defendant to show that his constitutional rights were violated. (See, e.g., *People v Berrios,* 28 NY2d 361, 367; *People v Malinsky,* 15 NY2d 86, 91, n 2.) Hence, the court here failed to allocate the burden correctly. Additionally, the court committed error with respect to the weight of evidence needed to sustain an arrest. The court correctly found that the proof offered at the hearing was primarily circumstantial. Officer Flannagan had not seen the defendant in actual possession of the weapon nor had he observed him engage directly in any criminal activity. From this, however, the court reasoned that, in order for the arrest to be held lawful, the evidence must "rule out any other inference than possession or attempted criminal possession of a weapon." In accordance with this analysis, the court concluded that the weapon "could have been placed on the floor by other members of the * * * traveling public, and, indeed, the defendant's motion of straightening up from a bent-over position might very well have been exploratory out of curiosity, or to see what it was after he, himself, seated himself in the car." The traditional circumstantial evidence test applied by the court is appropriate for a trial on the charge, not for a pretrial suppression hearing. An arrest is lawful if based upon probable cause. Although that standard is not met where the defendant's conduct is "at most equivocal and suspicious" *(People v Davis,* 36 NY2d 280, 282), an arrest need not be supported by information and knowledge which, at the time, excludes all possibility of innocence and points to the defendant's guilt beyond a reasonable doubt. (See, e.g., *People v Miner,* 42 NY2d 937; *Adams v Williams,* 407 US 143, 149.) As the very name suggests, probable cause depends upon probabilities, not certainty. *(Brinegar v United States,* 338 US 160, 175.) In the case at bar, then, Officer Flannagan did not lack probable cause to arrest merely because his observations could not rule out the *possibility* that the weapon, which lay some 12 inches from the defendant's foot, had been placed there sometime earlier by a now absent passenger, and that the defendant, who alone was in the

vicinity of the gun, was reaching down to it solely out of curiosity. When Officer Flannagan boarded the train, he saw the weapon in extremely close proximity to the defendant. No other person was in the area. The defendant appeared to have exclusive access to the gun and was clearly in position to exercise dominion and control over it. He was straightening up while withdrawing his hand from the precise spot at which the weapon now lay. In our view, these observations would warrant a prudent man in believing that the defendant was committing or had committed the offense. (Cf. *People v Williams,* 43 NY2d 725; *People v Phiefer,* 43 NY2d 719.) Nothing more is required to establish probable cause justifying a warrantless arrest. (See, e.g., *Henry v United States,* 361 US 98, 102; *People v Oden,* 36 NY2d 382, 384.) Accordingly, we hold that the defendant's arrest was lawful and that the motion to suppress, which was granted solely on the ground that his statement and the tangible evidence seized were the fruit of an illegal arrest, should have been denied. Moreover, although the hearing court made no specific findings as to the independent admissibility of the defendant's statement, we conclude that the statement was spontaneous and not the product of custodial interrogation. Hence, it may be received notwithstanding the absence of prior *Miranda* warnings. (See *People v Kaye,* 25 NY2d 139.) Lastly, we note that our holding here relates solely to the issue of whether the Constitution requires the exclusion of the evidence in question. We have no occasion, on this appeal, to comment upon whether the evidence relating to defendant's dominion and control over the weapon, as adduced at the hearing, would be sufficient to sustain a conviction on the charge. Mollen, P. J., Lazer, Cohalan and Weinstein, JJ., concur.