■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v ALBERT NOWELL, Respondent. — Order of the Supreme Court, New York County (Shea, J.), entered October 7, 1981, suppressing physical evidence and the defendant's postarrest statements, and order of the Supreme Court, New York County (Shea, J.), entered November 16, 1981, dismissing the indictment against the defendant, are reversed, on the law. The motion to suppress physical evidence and the defendant's postarrest statements is denied, the indictment reinstated, and the matter remanded for further proceedings. At approximately 5:00 P.M. on June 26, 1981, Peter Han was robbed by two men in the men's room of a Times Square movie theatre. They took his money and a key to a locker at the Port Authority bus terminal. Han reported the incident to the Port Authority police, allegedly asserting to Police Officers Joseph Giardina and Raymond Lasak that one of the perpetrators held his arm around Han's neck, while the other came in front and punched him. The man in front was described as being a black male wearing a black shirt, black pants, black hat, black sneakers and a red undershirt, while the one behind was purportedly the shorter of the two and had on a light-colored shirt, dungarees and white sneakers. Han also told the police that the locker number was 2296 and that it contained a camera. According to the officers, they had noted the descriptions of the assailants on a scrap of paper which had not been retained, but they had failed to transfer the information to a police form. After their interview with Han, the officers contacted James Keane, the baggage attendant at the bus terminal. They instructed him to remove the cylinder and the contents of locker No. 2296, which he did, and then advised him to be on the alert for anyone evincing an interest in that locker and to thereupon notify the police. The next day, at about 4:00 P.M., the defendant and another person, George Marshall, approached the baggage counter. Marshall, who was holding a red key, asked for the location of locker No. 2296. The defendant and Marshall exchanged some words, but Keane was not able to hear the conversation. Keane directed them to the locker and then went to the police desk where Officer Lasak was on duty. Having received Keane's information, Officer Lasak left the office and encountered Officer Giardina just entering. Officer Giardina accompanied Officer Lasak to the baggage claim counter, where they observed the defendant and

Marshall, both of whom fit the general description provided by Han. One man was wearing a black shirt, black pants, black sneakers and a black hat, and the other had on dungarees and a light-colored shirt. They were talking and, while not running, were walking faster than other people. The officers caught up with the defendant and Marshall, and Officer Giardina noticed the red key in Marshall's hand. Officer Giardina identified himself and Officer Lasak as police officers. Marshall turned over the key when demanded to do so, and he and the defendant were arrested, handcuffed and patted-down. They were escorted to the Port Authority police office where they were ordered to empty their pockets and were read their *Miranda* warnings. The defendant indicated his willingness to answer questions without a lawyer. Upon being asked to account for an airline ticket in the name of Peter Wzgodzinsky which he had just removed from his pocket, the defendant replied that he bought and sold stolen property and that he had purchased the ticket earlier in the day from a man in a pool hall for $10. Although Officer Giardina suspected that the defendant was one of the men who had robbed Han, the latter was unable to identify the defendant as the second perpetrator when he arrived at the office about one hour later. That night, as the defendant's arrest was being processed at central booking, the defendant was given his *Miranda* warnings and then interrogated by Police Officer Donald Kendall. Agreeing to talk without a lawyer, the defendant again stated that he bought and sold things for a living, had acquired the airline ticket in a pool hall and intended to sell it. By indictment filed on July 1, 1981, the defendant was charged with criminal possession of stolen property in the second degree. Following the hearing in connection with the motion to suppress the physical evidence and the defendant's postarrest statements, the court decided that the totality of the circumstances was not sufficient to provide probable cause to arrest the defendant. The court found that the stolen key possessed by Marshall was "not an article which an innocent person in defendant's place would know to be contraband", and the fact that the defendant was in the company of Marshall was "susceptible to an innocent interpretation." While the court concluded that the defendant had been adequately advised of his *Miranda* warnings, and his statements had been voluntarily made, the statements had to be suppressed because of the illegality of the arrest. We disagree with the determination of the hearing court. In *People v McRay* (51 NY2d 594, 602), the Court of Appeals declared that "[p]robable cause requires, not proof beyond a reasonable doubt or evidence sufficient to warrant a conviction * * * but merely information which would lead a reasonable person who possesses the same expertise as the officer to conclude, under the circumstances, that a crime is being or was committed". In the instant case, the police had knowledge of a robbery committed against Han in the course of which a Port Authority bus terminal rental locker key No. 2296 had been stolen. The following day, two men, whose appearance, if not apparel as well, was consistent with the description provided by the victim, turned up at the Port Authority terminal inquiring about locker No. 2296. When the officers approached the men as they walked towards the locker area, one of them was observed carrying a key which appeared to belong to a Port Authority rental locker. Although the court chose not to credit the police testimony regarding the suspects' clothing, the court did find that the officers were in possession of such details as the height, weight, sex and color of Han's assailants, and these matched the physical characteristics of the defendant and Marshall. Based on the foregoing, the police had probable cause to arrest the defendant. An arrest "need not be supported by information and knowledge which, at the time, excludes all possibility of innocence and points to the defendant's guilt beyond a reasonable doubt." (*People v Sanders,* 79 AD2d 688, 690.) Consequently, the physical evidence and defendant's postar-

rest statements were incident to a lawful arrest. Concur — Sullivan, J. P., Markewich, Bloom and Milonas, JJ.