■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v JAMES BERO and GILBERTO CRUZ, Respondents.—Appeal by the People from an order of the Supreme Court, Queens County (Pitaro, J.), dated December 10, 1985, which, after a hearing,

granted those branches of the defendants' omnibus motion which were to suppress physical evidence and statements to the police.

Ordered that the order is modified, on the law and the facts, by (1) deleting the provisions thereof which granted (a) that branch of the defendants' omnibus motion which was to suppress the television seized from under the first-floor staircase in the common hallway of the apartment building where the defendant Cruz resided, (b) that branch of the motion which was to suppress as evidence against the defendant Cruz physical evidence seized from Bero's apartment and the basement of the building where Bero resided, and (c) that branch of the motion which was to suppress Bero's statement to the police, and by substituting therefor provisions denying those branches of the motion, and (2) deleting the provision thereof which granted that branch of the motion which was to suppress Cruz's statements to the police and substituting therefor a provision granting that branch of the motion only to the extent of suppressing Cruz's statement that he just carried the bags without knowledge of their contents, and otherwise denying that branch of the motion; as so modified, the order is affirmed.

On December 7, 1984, at approximately 1:15 P.M., Officer Ruggio and his partner responded to a radio transmission of a possible burglary at 45-36 40th Street, in Queens. Upon arriving at that location, Ms. Durango, a tenant with an apartment on the second floor, informed the officers that she had called 911 and reported a burglary after hearing a crashing noise coming from the third-floor apartment directly above her apartment. According to Ms. Durango, she observed the defendants Bero and Cruz, whom she knew, descending the staircase from the third floor carrying white plastic shopping bags, soon after hearing noises emanating from the third-floor apartment. She next observed Bero and Cruz cross the street, still carrying the bags, and enter an apartment building in which Bero resided. Subsequently, she saw Cruz return to the third floor and come back downstairs carrying a television set. She did not see Cruz leave her apartment building. Ms. Durango provided the officers with the names and apartment numbers of both defendants. Cruz lived in the first-floor apartment in Ms. Durango's building. The officers investigated the third-floor apartment and observed that the door had been forced open and the apartment "ransacked". The officers then proceeded across the street to Bero's apartment, which was also located on the first floor. The officers knocked on the door

to Bero's apartment, identified themselves in response to an inquiry by a female voice, and requested permission to enter. Immediately after this announcement, Officer Ruggio heard a "commotion" within the apartment, feet running downstairs, and then silence. Officer Ruggio kicked open the door and asked the female occupant for James Bero. The female stated that she was alone and that Bero was not at home. During this brief conversation, Officer Ruggio observed a cut hole in the floor of the apartment with a "home-made" metal staircase leading to the basement. Near the staircase was a white plastic shopping bag of property, matching the description furnished by Ms. Durango. The officers proceeded down the staircase. They noticed two white plastic bags of property in the common basement of the apartment building near a punched-out hole in the wall. The hole led to an alleyway outside the building. While his partner seized the bags, Officer Ruggio walked out into the alley, which led to the street, and encountered the defendant Bero. He asked the defendant his name and the defendant responded "James Bero". After walking Bero to the front of his apartment building, Ms. Durango, who was looking out her window, nodded to the officer to indicate he had the right man. The defendant Bero was placed under arrest. The officers next knocked on the door of Cruz's apartment. When Cruz answered the door, he was placed under arrest. A television was recovered under the first-floor stairwell in the common hallway of the building where Cruz resided.

After Bero and Cruz were placed under arrest, the defendants asked why they were being arrested. Upon being told the charge was burglary, Bero told the officers that the apartment previously had been broken into that morning. Cruz said he did not break into an apartment and agreed with Bero that the apartment had already been broken into. Officer Ruggio, without advising the defendants of the *Miranda* warnings, asked defendants how they came into possession of the property. Cruz replied that he just carried the bags for a friend without knowledge of their contents.

Criminal Term found there was no probable cause to arrest the defendants and there were no exigent circumstances warranting a forcible, warrantless entry into Bero's apartment. Therefore, the court suppressed the physical evidence seized from Bero's apartment, the basement of the apartment building where Bero resided and the hallway of the apartment building where Cruz resided as the tainted fruits of unlawful arrests of the defendants and an illegal entry into Bero's

apartment. Additionally the defendants' statements to the police were also suppressed as evidence obtained by exploitation of arrests made without probable cause and as violative of the defendants' *Miranda* rights.

Although we disagree with the hearing court insofar as it found no probable cause to arrest the defendants, we agree that there were no exigent circumstances justifying the warrantless entry into the apartment of Bero.

Generally, information provided by an identified citizen accusing another individual of a specific crime is legally sufficient to provide the police with probable cause to arrest *(see, People v Phillips,* 120 AD2d 621; *People v Tidwell,* 122 AD2d 289). "A citizen's reliability, as differentiated from that of a paid or anonymous informant, is assumed, since he [or she] could be prosecuted if his [or her] report were a fabrication" *(People v Inman,* 80 AD2d 622). Here, the report of a named citizen (Ms. Durango), combined with the officers' observations of an apartment containing the telltale signs of a recent burglary, sufficed to provide the officers with probable cause to believe that a burglary had been committed and that the defendants Bero and Cruz were the perpetrators. The fact the evidence that Bero and Cruz were the burglars was circumstantial does not negate a finding of probable cause for their arrest *(see, e.g., People v Sanders,* 79 AD2d 688). "[A]n arrest need not be supported by information and knowledge which, at the time, excludes all possibility of innocence and points to the defendant's guilt beyond a reasonable doubt * * * As the very name suggests, probable cause depends upon probabilities, not certainty" *(People v Sanders, supra,* at 690; *People v Ragusa,* 112 AD2d 956, 957).

It is well established that probable cause does not, in and of itself, justify a warrantless, nonconsensual intrusion into a defendant's home *(Payton v New York,* 445 US 573). However, where exigent circumstances exist, the officer's failure to procure an arrest warrant is excusable *(Payton v New York, supra; People v Mealer,* 57 NY2d 214, *cert denied* 460 US 1024). The People contend that the response to the knock at the defendant Bero's door justified their conclusion that an immediate entry was essential to prevent the escape of Bero and/or the removal of stolen property. We disagree.

Various factors used by the courts to determine whether exigent circumstances are present include (1) the gravity or violent nature of the offense with which the suspect is to be charged, (2) whether there is reason to believe the suspect is

armed, (3) a clear showing of probable cause to believe that the suspect committed the crime, (4) strong reason to believe that the suspect is in the premises being entered, (5) likelihood that the suspect will escape if not swiftly apprehended, and (6) the time of day of the entry and whether the entry was peaceful in nature *(see, People v Mealer, supra; People v Bossett,* 124 AD2d 740, *lv denied* 70 NY2d 643; *People v Green,* 103 AD2d 362; *People v Gordon,* 110 AD2d 778; *Dorman v United States,* 435 F2d 385, 392-393). Although burglary involving a dwelling is classified as a violent felony offense (Penal Law § 70.02 [1] [b]), the police had no reason to believe the suspects were armed. Consequently, a delay in arresting the suspects while a warrant was being obtained would not pose a greater danger to the arresting officers or the community. Furthermore, the items stolen from the premises were not readily capable of disposal, as in a situation involving drugs *(cf., United States v Martinez-Gonzalez,* 686 F2d 93). Although it can be inferred that the stolen property was readily removable from the fact the suspects were observed carrying the stolen items in plastic shopping bags, it is unlikely that an attempt to remove the merchandise would have escaped the attention of a surveillance. The evidence in the record does not adequately explain why, upon securing the necessary information to prepare and secure a warrant, no attempt to obtain a warrant was made and no consideration was given to placing the apartments of Bero and Cruz under surveillance while an attempt to secure a warrant was being made. Nor does this case involve a true "hot pursuit", where a suspect attempts to defeat a proper arrest which has been set in motion in a public place by the expedient of escaping to a private place *(see, United States v Watson,* 423 US 411, *reh denied* 424 US 979; *United States v Santana,* 427 US 38). Prior to knocking on the door of Bero's apartment, the officers did not possess a reasonable belief that Bero would escape if not swiftly apprehended or that evidence would be destroyed or removed. While officers have a right to pursue their investigation by seeking voluntary cooperation from a suspect, the exigency which ensued from knocking on the door was foreseeable. Under the circumstances of this case, the creation by the police of a foreseeable emergency does not exempt them from the warrant requirement *(see, United States v Rosselli,* 506 F2d 627; *United States v Segura,* 663 F2d 411, *affd* 468 US 796). Consequently, the forcible entry into Bero's apartment was violative of his rights against an unreasonable search and seizure.

Since the physical evidence seized from Bero's apartment and the common basement was obtained as a direct result of the illegal entry into Bero's apartment, that evidence is plainly subject to exclusion (see, Wong Sun v United States, 371 US 471; Segura v United States, supra, at 804; Dunaway v New York, 442 US 200), but only as to the defendant Bero. The codefendant Cruz did not claim to have a possessory interest in the items seized, or in Bero's apartment, or in the basement of the latter's apartment building. Cruz never claimed an expectation of privacy in the area where the evidence was seized. Consequently, Cruz had no standing to challenge the warrantless entry into Bero's apartment and the seizure of the evidence found inside Bero's apartment and the subject basement (see, People v Gomez, 67 NY2d 843, 844; People v Henley, 53 NY2d 403; People v Ponder, 54 NY2d 160; People v Phillips, 118 AD2d 600, lv denied 67 NY2d 948). Accordingly, the court erred in granting Cruz's motion to suppress this physical evidence.

Furthermore, the exclusionary rule does not require suppression of the television set found behind the first-floor staircase in the common hallway of the building where Cruz, Ms. Durango and the complainant resided. The officers had a lawful right to be in the common area of the apartment building and had an independent source for discovery of this evidence, i.e., Ms. Durango's statement that she saw Cruz carry a television downstairs, but not across the street to Bero's apartment. It is clear that "evidence will not be excluded as 'fruit' unless the illegality is at least the 'but for' cause of the discovery of the evidence" (Segura v United States, supra, at 815). The record does not support an inference that the television would not have been discovered but for the illegal entry into Bero's apartment. Consequently, suppression of the television as to either of the defendants is not justified as it was not the direct or indirect product of unconstitutional conduct.

We next address the issue of whether Bero's statements should be suppressed as the tainted fruit of an unlawful arrest. The officers had probable cause to arrest Bero based upon information supplied by Ms. Durango and from their own observations of the victim's apartment, sources wholly unconnected with their illegal entry into Bero's apartment. Accordingly, the warrantless arrest of Bero, effectuated in a public place and predicated upon probable cause, derived from independent sources, was proper. Thus, suppression of his statements cannot be sustained by application of the fruit of

the poisonous tree doctrine *(see, People v Arnau,* 58 NY2d 27, 32, *cert denied* 468 US 1217; *Wong Sun v United States, supra,* at 488; *Segura v United States, supra).* Nor does the latter doctrine warrant suppression of statements made by the defendant Cruz after his arrest, which we also find to be predicated upon probable cause. It is noteworthy that the defendant Cruz only objected to the admission of his statements upon the ground that this evidence was the tainted fruit of an arrest that was not based upon probable cause or was violative of his *Miranda* rights. Inasmuch as the defendant Cruz never objected at the suppression hearing to the admission of his statements on the ground that they were the tainted fruit of an illegal, warrantless arrest in his home and, thus, effectively deprived the People of a fair opportunity to present their proof to rebut such a claim, any *Payton* issue has not been preserved for appellate review *(see, People v Miguel,* 53 NY2d 920; *People v Martin,* 50 NY2d 1029; *People v Leftwich,* 134 AD2d 371). Furthermore, contrary to Criminal Term's ruling, we conclude that the statements pertaining to the apartment having previously been broken into, which were made by the defendants immediately after being informed of the reason for their arrest, were spontaneous and not the product of custodial interrogation *(see, People v Sanders,* 79 AD2d 688, 691, *supra).* Therefore, those statements may be received notwithstanding the absence of prior *Miranda* warnings *(see, People v Kaye,* 25 NY2d 139). However, Criminal Term did not err in suppressing Cruz's statement that he just carried the bags for a friend without knowledge of their contents, which was in response to a question posed by Officer Ruggio and, thus, clearly the product of a custodial interrogation and violative of Cruz's *Miranda* rights. Weinstein, J. P., Rubin, Kooper and Sullivan, JJ., concur.