OPINION OF THE COURT
Edward A. Sheridan, J.
Defendant Juan Jacobo, indicted on one count of criminal possession of a controlled substance in the third degree (Penal Law § 220.16 [12]), moves to suppress a quantity of cocaine, a triple-beam scale and United States currency seized following *541 a warrantless arrest at his apartment and a statement made later to a police officer. On October 21 and November 1, 1991 the court conducted a hearing pursuant to Mapp v Ohio (367 US 643).
FINDINGS OF FACT
Between 9:00 p.m. and 9:30 p.m. on December 1, 1989, Juan Nunez entered the 30th Police Precinct detective squad room and stated that a man known to him as Juan Campana was wanted for a homicide and was at that moment in a "first floor” apartment at 1842 Amsterdam Avenue, about one-half block from the precinct station house. Interviewed by Detective John Fleming, Nunez appeared hysterical, agitated and distracted at times, and stated that Campana was going to kill him. During the 30-minute interview, Nunez provided no specifics about the reported homicide but stated repeatedly that he knew Campana was wanted, that he was right down the block from the precinct, that "he’s in there,” and "he’s going to kill me.” Nunez also provided Detective Fleming with the name of an FBI Agent, Frank Bohler, as a reference, whom Fleming called and was told that Nunez had provided reliable information in the past.
Fleming checked the precinct homicide book for the name Juan Campana. He found an entry for "Juan Campana Jacobo,” subsequently determined to be the defendant, who was wanted for a 1985 homicide. The file indicated that the case was still open, and that from a photograph array a witness who had been wounded in the incident had positively identified Jacobo as one of the perpetrators. Fleming also showed Nunez a photo array containing Jacobo’s picture, whom he immediately identified as the same person in the first floor apartment at 1842 Amsterdam Avenue.
After about 45 minutes of reviewing and verifying information, Detectives Fleming, Appel, Baile, Schlegler and McCabe then proceeded to 1842 Amsterdam Avenue with Nunez, who opened the locked outer door of the building. Fleming, followed by Schlegler, led the group up a narrow flight of stairs to a landing and hallway leading to the apartment to which Nunez had directed them. Nunez was in the rear. McCabe waited outside a few minutes to observe the windows of the building on Amsterdam Avenue and 151st Street, and then entered.
As Fleming, with his shield displayed, reached the landing, *542 a door opened six to eight feet away at the end of the hallway. The defendant walked out of the apartment, entered the hallway and closed the door behind him. Defendant then saw Fleming, reopened the door which hinges inward, and started to reenter as Fleming rushed toward him. Nunez, still on the stairs, shouted "that’s him.” Fleming grabbed defendant about the waist on the threshold, and was dragged three to four feet inside before pinning defendant against the right wall of the entry foyer. Fearing defendant might have a weapon, Fleming felt around defendant’s waist area. While he had defendant pinned against the entry foyer wall, Fleming had a view of the top of the kitchen counter on which he observed a triple-beam scale with a clear plastic bag next to it. Based on his experience as a police officer, Fleming recognized the scale as an apparatus commonly used to weigh narcotics and the plastic bag as a usual type of packaging. He then passed defendant to Schlegler, quickly canvassed the apartment to determine if anyone with a weapon was present and then seized from the kitchen counter the scale and the bag of suspected drugs he had seen there together with United States currency from the same area. Later, at the 30th Precinct, in the course of pedigree questioning, without Miranda warnings (Miranda v Arizona, 384 US 436) having been administered, defendant stated that he lived at the apartment where the arrest occurred.
CONCLUSIONS OF LAW
Fleming’s review of the homicide file of the suspect Juan Campana Jacobo coupled with Nunez’ information and identification of defendant, gave Fleming probable cause to arrest Jacobo without a warrant (CPL 140.05, 140.10 [1] [b]; 140.15). Fleming had gleaned sufficient information from the file to believe that the standard for arrest had been met: a double-murder had occurred in 1985, and there was reason to suspect that Juan Campana Jacobo was the perpetrator based on an eyewitness’ identification of Jacobo’s photograph in an array conducted shortly after the killings. Identification of a suspect’s photograph in an array constitutes probable cause to arrest the subject (People v Pinkney, 156 AD2d 182; People v Palacio, 121 AD2d 282, 283). Nor did the passage of five years since the identification render the probable cause stale. This was not a situation where police entered a premises, without a warrant, to make an arrest weeks after a suspect had been seen there (e.g., People v Miller, 109 Misc 2d 276). Probable *543 cause here was based not on where defendant was but who he had been identified to be — a status which had not changed over time. Fleming’s own observations in the hallway coupled with Nunez’ shouted identification, "that’s him”, confirmed the right person was being apprehended.
When defendant walked out of his apartment into the hallway and closed the door behind him as Fleming reached the hallway landing, he was entitled to arrest defendant on the spot. An apartment hallway is a public place for constitutional purposes (see, People v Bero, 139 AD2d 581, 586). It is not a place where a tenant has a reasonable expectation of privacy (People v Johnson, 114 Misc 2d 578, affd 126 AD2d 993, lv denied 69 NY2d 951; see, People v Covert, 134 AD2d 444). A warrantless arrest in a public place is constitutionally permissible if based on probable cause (United States v Watson, 423 US 411). Thus an arrest in the hallway would have been proper (People v Marzan, 161 AD2d 416). Moreover, a warrantless arrest may be made in the threshold of an arrestee’s doorway, if opened voluntarily, because it is a public place (People v Anderson, 146 AD2d 638; People v Nonni, 141 AD2d 862).
Defendant’s attempt to evade the police by reopening the apartment door and trying to reenter the apartment does not afford him added constitutional protection against a warrant-less arrest in these circumstances. Payton v New York (445 US 573), as a general rule, requires police to secure a warrant to effect an arrest in one’s home. However, "a suspect may not defeat an arrest which has been set in motion in a public place * * * by the expedient of escaping to a private place” (United States v Santana, 427 US 38, 43; People v Thomas, 164 AD2d 874).
Although it may be true, as noted by the dissenters in Santana (supra), that the rule articulated there is sui generis, "useful only in arresting persons who are 'as exposed to public view, speech, hearing, and touch’ * * * as though in the unprotected outdoors” (427 US, at 47), i.e., a public place, the facts of this case come squarely within the doctrine which was not vitiated by the holding in Payton (supra) itself (see, e.g., People v Levan, 62 NY2d 139, 145). Here the arrest was set in motion when defendant was in the hallway, a public place for Fourth Amendment analysis. The arrest occurred when Fleming grabbed defendant on the threshold as he began to retreat into his apartment (see, e.g., People v Fripp, 85 AD2d 547). Fleming was still in the hallway and defendant was still in *544 the doorway or threshold. As defendant fled inside, the arrest having been initiated properly, Fleming was entitled to effectuate it in a reasonable manner and to prevent defendant from fleeing. The intrusion was minimal. He was propelled three to four feet into the foyer as he held the defendant. There was no breaking of the door which was still open as defendant retreated (cf., People v Bero, supra). It follows, therefore, that Detective Fleming was lawfully in the place from which he saw in plain view the contraband and drug paraphernalia and was entitled to seize it.
Finally, defendant’s statement elicited at the precinct that he lived in apartment 1, at 1842 Amsterdam Avenue, occurred during arrest processing and pedigree questioning which need not be preceded by Miranda warnings (People v Rodriquez, 39 NY2d 976, 978).
Accordingly, defendant’s motion to suppress physical evidence and the statement is denied in all respects.