Benitez v City of New York (2024 NY Slip Op 50370(U))

[*1]

Benitez v City of New York

2024 NY Slip Op 50370(U)

Decided on April 8, 2024

Supreme Court, New York County

Kingo, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 8, 2024
Supreme Court, New York County

Melody Ann Benitez, ANGEL ANTONIO CASTRO, Plaintiff,

against
The City of New York, LENOX HEALTH GREENWICH VILLAGE-NORTHWELL HEALTH, P.O. PETER MARTER, LANCE FOLKES, JOHN DOE, JANE DOE, Defendant.

Index No. 158678/2017

Alexander Shulman, Esq. for Plaintiff
Remi Milnes, Esq. for Defendant

Hasa A. Kingo, J.

The following e-filed documents, listed by NYSCEF document number (Motion 003) 88, 89, 90, 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 117, 118, 119 were read on this motion for SUMMARY JUDGMENT.
Upon the foregoing documents, defendants the City of New York (the "City") and Police Officer Peter Marter's ("Officer Marter") (together, the "City Defendants") motion for summary judgment and dismissal is granted in part and to the extent set forth herein.
Background
Plaintiffs Melody Ann Benitez ("Ms. Benitez") and Angel Antonio Castro ("Mr. Castro") (together, "Plaintiffs") filed this action to recover damages for personal injuries and civil rights violations they allegedly sustained as the result of events that occurred on September 29, 2016 (Statement of Material Facts, NYSCEF Doc No. 90 ¶ 1). On September 29, 2016, Plaintiffs attended a scholarship dinner hosted by the Puerto Rican Bar Association, where they both consumed alcoholic drinks (id. ¶ 3). Mr. Castro was wearing a three-piece suit and Ms. Benitez was wearing a white dress (id. ¶ 1). Immediately following the scholarship dinner, Plaintiffs walked in the vicinity of 10th Avenue and 21st Street, New York, New York, to hail a taxi (id. ¶ 4).
On the evening of the incident, Officer Marter, his partner Kathleen Ryan, and Officer Jose Guzman, who were all in uniform and assigned to regular patrol duty, received a call from dispatch for a possible domestic assault involving a male and female in a "nicely white dress" [*2]who was struck by said male and fell to the ground (id. ¶ 5-6). The officers responded to 10th Avenue and 21st Street, New York, New York, where the incident was reported to have occurred (id.) Plaintiffs were standing underneath a bus stop shelter when they were approached by police officers in a marked New York City Police Department ("NYPD") vehicle (NYSCEF Doc No. 101, Benitez deposition tr at 56). Ms. Benitez testified that she approached the car and was informed by the occupants that they had received a call in the area regarding a woman in a white dress. (id.). She told them "that's not me" (id.). Thereafter, additional officers arrived on the scene and Ms. Benitez and Mr. Castro were separately interviewed (NYSCEF Doc No. 90, Statement of Material Facts ¶ 6; NYSCEF Doc No. 102, Marter deposition at 50).
During her interaction with the police, Ms. Benitez became very angry and argumentative with the police. The officers present later testified that she appeared very intoxicated (NYSCEF Doc No. 102, Marter deposition transcript at 46; Ryan deposition transcript at 34). Officer Ryan took a video of parts of the incident on her cellphone (NYSCEF Doc No. 90, Statement of Material Facts ¶ 6). Ms. Benitez is barefoot for the duration of the video (NYSCEF Doc No. 99; NYSCEF Doc No. 101, Benitez transcript at 102). In the first minute of the video, Ms. Benitez takes photos or videos of the officers' badges and states that she and Mr. Castro are going to advocate for their removal from the police force (NYSCEF Doc No. 99, video at 00:17-00:23). She repeatedly expresses frustration with the officers and shouts "Bill Gratton Step Down" or "Bill Bratton Step Down" while waiving her fist in the air (NYSCEF Doc No. 99, video at 00:17, 01:33-02:00).[FN1]

Approximately three minutes into the video, an officer informed Ms. Benitez that she was being detained based on the call regarding the alleged assault, her perceived level of intoxication, and the need for further evaluation by Emergency Medical Services ("EMS") for her safety (id. at 02:55-03:15). After the officers advised Ms. Benitez she was being detained, she became increasingly angry and yelled several inflammatory statements about police to the officers and passersby (id. at 03:55-07:00; NYSCEF Doc No. 101, Benitez deposition at 114-116). Among other things, she stated or yelled "I'm suffering" several times and that the police should "slit her throat" so that she would "die for a real cause" (id. at 03:55-07:00; NYSCEF Doc No. 101, Benitez deposition at 111-112). Ms. Benitez later described herself as "very, very triggered" during this interaction (NYSCEF Doc No. 101, Benitez deposition at 111). Ms. Benitez also later testified that at the time of incident with the police, she was diagnosed with manic depression, bipolar disorder, and post-traumatic stress disorder ("PTSD") (id. at 95-96, 173).
During Ms. Benitez's interaction with the police, Mr. Castro approached Ms. Benitez, took her by the hand and attempted to guide her away from the police officers (NYSCEF Doc No. 98, Castro deposition transcript at 68; NYSCEF Doc No. 101, Benitez deposition transcript at 80-81). Officers present at the scene testified that Mr. Castro repeatedly tried to leave the scene with Ms. Benitez, despite being informed that she was being detained (NYSCEF Doc No. 102, Marter deposition transcript at 69; Ryan deposition transcript at 24, 32-33). Mr. Castro was then temporarily handcuffed (NYSECEF Doc No. 90, Statement of Material Facts ¶ 10).
An ambulance arrived and Emergency Medical Technicians ("EMTs") examined both Plaintiffs (id.). Mr. Castro was then released, and Ms. Benitez was brought in the ambulance to [*3]Lenox Hill Hospital, where she was taken to an examination room located in the emergency department (id. ¶ 12-13). Mr. Castro travelled separately to the hospital, not accompanied by the NYPD. Officers Ryan and Marter, Nurse Fammetta, and hospital security personnel Lance Folks and Samuel Jerome, among others, were in the examination room with Ms. Benitez (id. ¶ 13). The examination room had a clear glass sliding door and a separate glass window with a curtain (id. ¶ 14). After Ms. Benitez entered the room, hospital staff closed the door of the room and drew the curtain (id.) At approximately 11:57 p.m., Mr. Castro slid open the glass door and entered the room (id.).
When Mr. Castro entered the room, Ms. Benitez was in a state of undress, although the parties dispute the extent to which she was unclothed (id.; NYSCEF Doc No. 116, Response to Statement of Material Facts at 8). Officers Marter, Ryan and hospital security guards, defendant Lance Folkes ("Mr. Folkes"), and security supervisor Samuel Jerome ("Mr. Jerome") were all assisting in restraining Ms. Benitez (NYSECEF Doc No. 90, Statement of Material Facts ¶ 14). Ms. Benitez was then given a sedative and has no memory of the events that transpired after sedation (id.). Nurse Fiammetta later testified that Ms. Benitez's blood was tested at the hospital and her blood alcohol content was .262, which is considered intoxicated for an individual of Ms. Benitez's weight (NYSCEF Doc No. 103, Fiammetta deposition testimony at 78-79).
Mr. Folkes then tried to remove Mr. Castro from the examination room (id. ¶ 15). Mr. Folkes, Mr. Jerome, and Officers Marter and Ryan testified that Mr. Castro struck Mr. Folkes with a closed fist about the upper chest before Mr. Folkes made contact with Mr. Castro (id.). Mr. Castro testified that Mr. Folkes "attacked" him (NYSCEF Doc No. 98, Castro deposition at 118). Mr. Castro further testified that he did not attempt to hit, kick, spit, push, or curse at anyone in the examination room (id. at 119). As depicted in a surveillance video taken from outside the examination room, the two men grapple as they exit the room (NYSCEF Doc No. 100 at 07:47). The officers and hospital security then subdued Mr. Castro, and he was arrested and charged with two counts of Assault in the Third Degree, in violation of Penal Law § 120.00(1) and § 120.00(2), Resisting Arrest, in violation of Penal Law § 205.30, Aggravated Harassment in the Second Degree, in violation of 240.30(4), and Harassment in the Second Degree, in violation of Penal Law § 240.26(1) (id.; NYSECEF Doc No. 90, Statement of Material Facts ¶ 17). The criminal case against Mr. Castro was ultimately dismissed and sealed.
Plaintiffs filed a Notice of Claim on December 6, 2016. On March 9, 2017, both Plaintiffs gave sworn testimony at their respective hearings pursuant to General Municipal Law § 50-h. Plaintiffs commenced this action on September 28, 2017 by filing a summons and complaint against the City Defendants, Lenox Health Greenwich Village-Northwell Health ("Lenox Hill"), Officer Marter, and Mr. Folkes. The complaint interposes causes of action for (1) False Arrest under New York state law and 42 U.S.C. § 1983 against the City Defendants, (2) Excessive Force under 42 U.S.C. § 1983 and New York State law against City Defendants, (3) Monell under 42 U.S.C. § 1983 against the City, (4) Failure to Intervene under 42 U.S.C. § 1983, (5) Negligent Hiring, Training and Supervision against the City and Lenox Health Hospital under New York state law, (6) Malicious Prosecution under 42 U.S.C. § 1983 and New York state law on behalf of Mr. Castro against all Defendants, and (7) Assault and Battery on behalf of Mr. Castro against Mr. Folkes.
Issue was joined when Defendants Lenox Hill and Mr. Folkes filed an answer with affirmative defenses on November 20, 2017 (NYSCEF Doc No. 6), and the City Defendants [*4]filed an amended answer on February 1, 2018 (NYSCEF Doc No. 8).[FN2]
The amended answer asserts a cross-claim against Lenox Hill and Mr. Folkes. On April 18, 2019, Lenox Hill filed a third-party complaint against Apollo Security International, Inc., which was subsequently discontinued by a stipulation between the parties filed on August 10, 2022 (NYSCEF Doc Nos. 12, 85).
The City Defendants now move for the following relief: (1) for summary judgment on both Plaintiffs' claims for false arrest and false imprisonment under state and federal law as against the City Defendants; (2) for summary judgment dismissing Ms. Benitez's state and federal claims for Assault, Battery, and Excessive Force; (3) for summary judgment dismissing Mr. Castro's claims for malicious prosecution under state and federal law; (4) for summary judgment dismissing both Plaintiffs' claims for failure to intervene; (5) dismissing both Plaintiffs' claims for negligent hiring, retention, training, and supervision pursuant to CPLR § 3211(a)(7); (6) dismissing Plaintiffs' Monell claims under 42 U.S.C. § 1983 as against the City Defendants pursuant to CPLR § 3211(a)(7) and CPLR § 3212; and for such other and further relief as this Court may deem proper. Plaintiffs' oppose the motion, except to the extent that Plaintiffs voluntarily dismiss their claims for Negligent Hiring and Retention and Monell claims against the City.
Discussion
A motion for summary judgment "shall be granted if, upon all the papers and proofs submitted, the cause of action or defense shall be established sufficiently to warrant the Court as a matter of law in directing judgment in favor of any party" (CPLR § 3212[b]). "The proponent of a motion for summary judgment must demonstrate that there are no material issues of fact in dispute, and that it is entitled to judgment as a matter of law" (Dallas-Stephenson v Waisman, 39 AD3d 303, 306 [1st Dept 2007]). The movant's burden is "heavy," and "on a motion for summary judgment, facts must be viewed in the light most favorable to the non-moving party" (William J. Jenack Estate Appraisers & Auctioneers, Inc. v Rabizadeh, 22 NY3d 470, 475 [2013] [internal quotation marks and citation omitted]). Upon proffer of evidence establishing a prima facie case by the movant, the party opposing a motion for summary judgment bears the burden of producing evidentiary proof in admissible form sufficient to require a trial of material questions of fact (Zuckerman v City of New York, 49 NY2d 557, 562 [1980]). "A motion for summary judgment should not be granted where the facts are in dispute, where conflicting inferences may be drawn from the evidence, or where there are issues of credibility" (Ruiz v Griffin, 71 AD3d 1112, 1115 [2d Dept 2010] [internal quotation marks and citation omitted]).
A. False Arrest
At the outset, the City Defendants move to dismiss the first cause of action for false arrest under New York state law and pursuant to 42 U.S.C. § 1983. "Under the common law, a plaintiff may bring suit for false arrest and imprisonment against one who has unlawfully robbed the plaintiff of [their] 'freedom from restraint of movement'" (De Lourdes Torres v Jones, 26 NY3d 742, 759 [2016], quoting Broughton v State of New York, 37 NY2d 451, 456 [1975], cert [*5]denied sub nom. Schanbarger v Kellogg, 423 US 929 [1975][other citation omitted]).[FN3]
To prevail on a cause of action for false arrest or imprisonment, the plaintiff must demonstrate (1) that the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not privileged" (De Lourdes Torres, 26 NY3d 742, 759 [2016]). The elements of false arrest are "substantially the same" under state and federal law and require the same analysis (Crooks v City of New York, 189 AD3d 771, 771 [2d Dept 2020]["The elements of false arrest and malicious prosecution under the federal statute are substantially the same as the elements of the comparable state common-law claims"]).
"For purposes of the privilege element of a false arrest and imprisonment claim, an act of confinement is privileged if it stems from a lawful arrest supported by probable cause" (De Lourdes Torres, 26 NY3d at 759 [citations omitted]; see Gann v City of New York, 197 AD3d 1035, 1035 [1st Dept 2021]["showing of probable cause to arrest is a complete defense to an unlawful arrest and imprisonment claim"]). "Probable cause consists of such facts and circumstances as would lead a reasonably prudent person in like circumstances to believe plaintiff guilty" (Colon v City of New York, 60 NY2d 78, 82 [1983]; see De Lourdes Torres, 26 NY3d at 759; Atwater v City of Lago Vista, 532 US 318, 354 [2001]["If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender"]). "Probable cause does not require proof sufficient to warrant a conviction beyond a reasonable doubt but merely information sufficient to support a reasonable belief that an offense has been or is being committed by the suspected individual, and probable cause must be judged under the totality of the circumstances" (De Lourdes Torres, 26 NY3d at 759). "In general, the existence or absence of probable cause is a question of fact and becomes a question of law to be decided by the court only where there is no real dispute as to the facts or the proper inferences to be drawn therefrom" (Holland v City of Poughkeepsie, 90 AD3d 841, 845 [2d Dept 2011][internal quotes omitted])0.
The City Defendants move for summary judgment to dismiss the cause of action for false arrest on the grounds that the police officers had probable cause to detain her as an emotionally disturbed person pursuant to Mental Hygiene Law ("MHL") § 9.41. Under MHL § 9.41(a), "[a]ny peace officer, when acting pursuant to his or her special duties, or police officer who is a member of the state police or of an authorized police department or force or of a sheriff's department may take into custody any person who appears to be mentally ill and is conducting himself or herself in a manner which is likely to result in serious harm to the person or others."
Under the statute, "likely to result in serious harm" is defined as follows:
(a) a substantial risk of physical harm to the person as manifested by threats of or attempts at suicide or serious bodily harm or other conduct demonstrating that the person is dangerous to himself or herself, or (b) a substantial risk of physical harm to other persons as manifested by homicidal or other violent behavior by which others are placed in reasonable fear of serious physical harm.
(Mental Hygiene Law § 9.01).
Courts that have addressed seizures under a state's mental hygiene laws have applied the concepts of probable cause developed in criminal Forth Amendment seizure cases (Bayne v Provost, 2005 WL 1871182, *6 [NDNY 2005]; Amato v Hartnett, 936 F Supp 2d 416, 435 [SDNY 2013]; Ferdinand v The City of New York, 2021 WL 1312836 [Sup Ct, NY County 2021]). In the context of a mental health seizure, probable cause exists where the facts and circumstances known to the officers at the time they seized the individual were sufficient to warrant a person of reasonable caution to believe that the individual may be mentally ill and conducting themselves in a manner likely to result in serious harm to the person or others (Amato v Hartnett, 936 F Supp 2d 416, 435 [SDNY 2013]; Bayne v Provost, 2005 WL 1871182 at *7).
Plaintiffs do not contest the mental illness prong of MHL § 9.41 in opposition to the motion, but argue there was no evidence that Ms. Benitez was a danger to herself or others, as required to establish probable cause for a seizure under the Mental Hygiene Law. The City Defendants point to Ms. Benitez's mental health diagnoses, blood alcohol level and behavior depicted in the cell phone videos to support its argument that probable cause existed to detain her pursuant to the Mental Hygiene Law (NYSCEF Doc No. 89, affirmation in support ¶ 51). However, the existence of probable cause must be determined based on the facts and circumstances known to the officers at the time of the seizure. In this instance, that includes only the information conveyed to the officers regarding the call from dispatch about a possible domestic assault and the officers' direct observations and interactions with Ms. Benitez. There is no evidence that the officers were aware of her diagnoses and blood alcohol level prior to detaining her, and suspicion of intoxication alone is not sufficient to establish probable cause for a seizure under the Mental Hygiene Law (see Ferdinand v The City of New York, 2021 WL 1312836 [Sup Ct 2021]).
Contrary to the assertions of the City Defendants, the videos of Ms. Benitez's interactions with the police do not depict a circumstance where there is no real dispute as to whether Ms. Benitez was a danger to herself or others. Ms. Benitez's Fourth Amendment claims encompass both her initial detention and the hospitalization that followed, but probable cause is evaluated at the first moment of seizure (Beck v Ohio, 379 US 89, 91 [1964]). As depicted in the video, the officers advised Ms. Benitez that she was being detained approximately three minutes into the first video (NYSCEF Doc No. 99, video at 02:55-03:15). Prior to being detained, she repeatedly questioned whether she was detained while standing or walking barefoot on the sidewalk, but she did not trip or stumble, her speech was clear and intelligible, and she did not make any threats of self-harm or harm to others. Viewed in the light most favorable to the non-moving party, a jury could conclude that it was not reasonable for the officers to believe Ms. Benitez was a danger to herself or others (see Smolian v Port Auth. of New York and New Jersey, 128 AD3d 796, 799 [2d Dept 2015]; Amato v Hartnett, 936 F Supp 2d 416, 435 [SDNY 2013]). The subsequent speculative testimony of Officers Marter and Ryans that she could have run into the street or fallen onto a subway track is unpersuasive because there was no apparent risk of these dangers during their interaction with Ms. Benitez, as it is depicted in the videos taken by Officer Ryan. Given the conflicting evidence, the question of probable cause is appropriately left to the jury (Mendez v City of New York, 137 AD3d 468, 470 [1st Dept 2016]["Where there is conflicting evidence concerning the existence of probable cause to arrest the plaintiff, from which reasonable persons might draw different inferences, the question is one for the jury"]). [*6]Therefore, summary judgment is denied with respect to Ms. Benitez's cause of action for false arrest and false imprisonment. The outstanding questions of fact regarding the reasonableness of the officers' actions also precludes a determination at this stage regarding qualified immunity (Delgado v City of New York, 86 AD3d 502, 510 [1st Dept 2011]["To be entitled to qualified immunity, it must be established that it was objectively reasonable for the police officer involved to believe that his or her conduct was appropriate under the circumstances, or that officers of reasonable competence could disagree as to whether his or her conduct was proper"]; see also Amato, 936 F Supp 2d at 436).
Mr. Castro's false arrest claims arise from three distinct events on the evening in question, including (1) the initial detainment in connection with the call regarding a domestic assault, (2) Mr. Castro's alleged obstruction with the detention of Ms. Benitez, and (3) his arrest following the altercation with Mr. Folkes. The City Defendants contend that probable cause existed to detain Mr. Castro first because of the officers' reasonable suspicion based on the call regarding a domestic assault and later because there was probable cause to arrest him for Obstructing Governmental Administration in the Second Degree pursuant to Penal Law § 195.0. In relevant part, Penal Law § 195.0 provides that "[a] person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act[.]" However, "[a] defendant may not be convicted of obstructing governmental administration or interfering with an officer in the performance of an official function unless it is established that the police were engaged in authorized conduct" (People v Sumter, 151 AD3d 556, 557 [1st Dept 2017]). Assuming arguendo that the initial stop and detention of Mr. Castro was privileged because the officers had a reasonable suspicion based on the report from dispatch regarding a possible domestic assault (see Terry v Ohio, 392 US 1 [1969], et al.]), the outstanding questions of fact regarding probable cause to detain Ms. Benitez nonetheless precludes a determination that the officers were engaged in authorized conduct, which is required to establish probable cause for a charge for obstruction of governmental administration. Therefore, summary judgment is denied with respect to these events.
As it pertains to the arrest at the hospital, the City Defendants argue that Mr. Castro's false arrest claim must fail because there was probable cause to arrest him for Assault in the Third Degree pursuant to Penal Law § 120.00(1). A person is guilty of assault in the third degree when, with intent to cause physical injury to another person, they cause such injury to such person or a third person (Penal Law § 120.00[1]). Probable cause is a complete defense to state and federal causes of action for false arrest (De Lourdes Torres, 26 NY3d at 759 [citations omitted]; Gann, 197 AD3d at 1035). Here, the City Defendants have met their burden of establishing the existence of probable cause at the time of Mr. Castro's arrest for assault in the third degree. The arresting officers' own observation of the events that occurred, in conjunction with the statements of the complaining witness, Mr. Folkes, which he attested to in a sworn deposition annexed to the criminal complaint, were sufficient to provide them with probable cause for the arrest (Williams v City of New York, 114 AD3d 852, 853 [2d Dept 2014]["Generally, information provided by an identified citizen accusing another individual of a specific crime is legally sufficient to provide the police with probable cause to arrest"]; People v Bero, 139 AD2d 581, 584 [2d Dept 1988]["A citizen's reliability, as differentiated from that of a [*7]paid or anonymous informant, is assumed, since [they] could be prosecuted if [the] report were a fabrication"][internal quotation marks and citation omitted]).
The "internal inconsistences" cited by Plaintiffs are insufficient to raise a triable issue of fact to preclude summary judgment. "Probable cause does not require proof sufficient to warrant a conviction beyond a reasonable doubt but merely information sufficient to support a reasonable belief that an offense has been or is being committed by the suspected individual, and probable cause must be judged under the totality of the circumstances" (De Lourdes Torres, 26 NY3d at 759). Moreover, the existence of probable cause is measured "at the moment the arrest was made" (Beck v Ohio, 379 US 89, 91 [1964]). The disparity between subsequent deposition testimony and surveillance video footage may potentially impact Mr. Castro's final guilt or innocence, yet it holds no relevance to the issue of probable cause. This is because it does not alter the evidence accessible to the officers at the moment of the arrest. (Agront v City of New York, 294 AD2d 189, 190 [1st Dept 2002]["The alleged conflicting evidence uncovered in the course of the police investigation is relevant to the issue of whether guilt beyond a reasonable doubt could have been proven at a criminal trial, not to the initial determination of the existence of probable cause"]). Therefore, summary judgment is appropriate only as to that portion of the cause of action for false arrest that arises from Mr. Castro's arrest at the hospital.
B. Excessive Force
The City Defendants next move for summary judgment on Plaintiffs' second cause of action for excessive force under New York state law and under 42 U.S.C. § 1983, which alleges that the City Defendants violated their constitutional rights and used excessive force against Plaintiffs by "assaulting, hitting, striking, manhandling Plaintiff Castro and by removing the closing, exposing the private body parts and physically restraining Plaintiff Benitez against her will" (NYSCEF Doc No. 1 ¶ 44). "[A]ssault and battery claims, when alleged against a police officer, are evaluated like excessive force claims" (Brown v City of New York, 2013 WL 491926 [SDNY 2013], citing (Holland v. City of Poughkeepsie, 90 AD3d 841, 845 [2d Dept 2011]). Under both state and federal law, "claims that law enforcement personnel used excessive force in the course of an arrest are analyzed under the Fourth Amendment and its standard of objective reasonableness" (Holland v City of Poughkeepsie, 90 AD3d at 844; see also (Lennox v Miller, 968 F3d 150 [2d Cir 2020]). A de minimis use of force will rarely suffice to state a constitutional claim (Hudson v McMillian, 503 US 1, 9 [1992]), and a claim of excessive force is correctly dismissed where it is unsupported by evidence of injury (Davidson v City of New York, 155 AD3d 544, 544 [1st Dept 2017]["The claim of excessive force was correctly dismissed since plaintiff testified that the handcuffs were too tight, but [] did not testify, or submit other evidence, that he sustained physical injury as a result"], citing Burgos-Lugo v City of New York, 146 AD3d 660, 662 [1st Dept 2017]). Nevertheless, any touching of a plaintiff during an illegal arrest may constitute excessive force (Johnson v Suffolk Cnty. Police Dep't, 245 AD2d 340, 440-441 [2d Dept 1997]). Therefore, the questions of fact regarding probable cause to detain Ms. Benitez also preclude summary judgment on the cause of action for excessive force.
C. Malicious Prosecution
Movants next seek summary judgment to dismiss Mr. Castro's sixth cause of action for malicious prosecution on the grounds that there was probable cause to prosecute him, because there is no evidence of actual malice in his prosecution pursuant to New York state law and 42 [*8]U.S.C. § 1983, and because Defendants are qualifiedly immune from suit. To recover damages for malicious prosecution, a plaintiff must establish (1) that a criminal proceeding as initiated against them, (2) it termination favorably to plaintiff, (3) lacked probable cause, and (4) was brought out of actual malice (Morant v City of New York, 95 AD3d 612 [1st Dept 2012], quoting Colon v City of New York, 60 NY2d 78,82 [1983]; Martinez v City of Schenectady, 97 NY2d 78, 84 [2001]). The elements and analysis of malicious prosecution are substantially the same under state and federal law (Crooks, 189 AD3d at 771, supra). As outlined above, probable cause existed for Mr. Castro's arrest at the hospital (see supra at 13-15). The existence of probable cause constitutes a complete defense to a claim of malicious prosecution (Lawson v City of New York, 83 AD3d 609 [1st Dept 2011]). Additionally, Plaintiffs have made no showing of actual malice (see Martinez, 97 NY2d at 84). Therefore, summary judgment is granted dismissing the cause of action for malicious prosecution.
D. Failure to Intervene
"It is widely recognized that all law enforcement officers have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence" (Anderson v Branen, 17 F3d 552, 557 [2d Cir 1994]). "An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official" (id. [internal citations omitted]). "In order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring" (id.). Summary judgment is inappropriate where there are triable issue of fact regarding whether law enforcement officers infringed on a citizen's rights. Therefore, summary judgment is denied with respect to the cause of action for failure to intervene as it relates to the remaining causes of action.
E. Negligent Hiring, retention, training and supervision and Monell
As set forth in the opposing papers, Plaintiffs voluntarily dismiss their claims for Negligent Hiring, Training, and Supervision and their Monell claims against the City (London Aff. in Opposition ¶ 4). Therefore, the third cause of action for Monell is dismissed in its entirety and the fifth cause of action is dismissed as to the City Defendants due to voluntary withdrawal and this portion of the motion is denied as moot.
Accordingly, it is
ORDERED that the motion for summary judgment is granted in part and to the extent set forth herein; and it is further
ORDERED that the first cause of action for false arrest and false imprisonment is dismissed in part and as it pertains to plaintiff Angel Castro's detention and arrest at Lenox Hill Hospital on September 29, 2016; and it is further
ORDERED that the third cause of action under Monell is dismissed as voluntarily withdrawn; and it is further
ORDERED that the fourth cause of action for failure to intervene is dismissed only to the extent that it relates to Angel Castro's detention and arrest at Lenox Hill Hospital on September 29, 2016; and it is further
ORDERED that the fifth cause of action for negligent hiring, training and supervision is [*9]dismissed as against the City of New York; and it is further
ORDERED that the sixth cause of action for malicious prosecution is dismissed; and it is further
ORDERED that the balance of the motion for summary judgment is denied; and it is further
ORDERED that a status and settlement conference for this matter shall be held on May 7, 2024 at 12:30 p.m. in the courtroom located in Room 320 at 80 Centre Street, New York, New York.
This constitutes the decision and order of the court.
DATE 4/8/2024
HASA A. KINGO, J.S.C.

Footnotes

Footnote 1:The parties dispute whether Ms. Benitez stated Gratton or Bratton.

Footnote 2:The City and Officer Marter's original answer was not filed with the court.

Footnote 3:In New York, the tort of false arrest is synonymous with that of false imprisonment," and therefore require the same analysis (Posr v Doherty, 944 F2d 91, 96 [2d Cir 1991]; see also Crooks v City of New York, 189 AD3d 771, 771 [2d Dept 2020]).