(March 8, 2016)

■ Hector Mendez, Respondent, v City of New York et al., Appellants. [27 NYS3d 8]—

Order, Supreme Court, Bronx County (Fernando Tapia, J.), entered April 8, 2015, which denied defendants' motion for summary judgment dismissing the complaint, modified, on the law, to grant the motion as to the claim of excessive force, and otherwise affirmed, without costs.

According to plaintiff, Hector Mendez, on May 25, 2009, at approximately 10:40 p.m., he was walking down a public sidewalk in the Bronx on his way to meet a woman named Sandra at a Memorial Day barbecue. He inquired of a passerby walking toward him from the opposite direction, later identified as Jamal Joseph, whether he had seen "a white girl . . . with long hair." Shortly thereafter, several police officers "rolled up" in an unmarked vehicle. Plaintiff was told to freeze, whereupon two officers exited the vehicle. They threw plaintiff and Joseph against the wall of a nearby apartment building. When plaintiff inquired why he was being stopped, he was told to "shut up." Plaintiff was handcuffed, read his rights, and transported to the precinct.

On May 25, 2009, the day of plaintiff's arrest, Officers Shea and Moreno and their supervisor, Lieutenant Davis, were on patrol in the vicinity. Shea observed plaintiff standing near Joseph on the sidewalk, admittedly doing nothing suspicious. After circling the block, the officers happened upon the men again, walking in opposite directions, Mendez toward Morris Avenue and Joseph east toward Grand Concourse. Shea, in the passenger seat of the police vehicle, observed Joseph dip behind a parked vehicle, whereupon he heard a "metallic clink" as an object hit the ground. Lieutenant Davis, who was in the rear

passenger seat, testified that he observed Joseph "duck[ ] down to the ground." Shea told Officer Moreno, "I got this guy," and exited the vehicle. Shea and Davis were focused on Joseph and did not have occasion to observe plaintiff. Shea testified that for the minute or two prior to exiting the vehicle, he had not observed an object in plaintiff's hands. Neither observed plaintiff in possession of contraband.

Officer Moreno testified that he observed Joseph drinking from an open container. Joseph said, "We don't have no problem here," or words to that effect, as the officers slowly drove by. Moreno wanted to circle back and talk to them because Joseph appeared "over anxious" to prove he was not doing anything wrong. Before approaching plaintiff, Moreno heard "something hit the ground and slide." Shea exited the vehicle and approached Joseph. Using a flashlight, Moreno observed the gun attributed to Joseph on the street underneath a parked van. He yelled "92" to his partner, their code word for "arrest." Moreno testified that as he lifted his flashlight up, he observed plaintiff with his right hand extended, dropping an object onto a pile of garbage bags on the sidewalk. Moreno then observed a gun on top of the garbage bags. Shea apprehended Joseph, and Moreno apprehended plaintiff. Plaintiff did not resist arrest. The evidence collection unit recovered both weapons.

Shea, the arresting officer, prepared the relevant paperwork. Moreno indicated to Shea, either at the scene or back at the precinct, that a second gun had been recovered on garbage near plaintiff; however, no notation of Moreno's observations regarding the gun are recorded in the police paperwork, i.e., the memo books,[1] arrest report, criminal court affidavit and vouchers. Moreno conceded that his observations were not reflected anywhere in the relevant paperwork. The paperwork states only that plaintiff had in his custody and control a semiautomatic firearm. The paperwork does not reflect Moreno having observed plaintiff discard the firearm onto the pile of garbage.

At the precinct, plaintiff was informed that he was being charged with the possession of a loaded firearm. He was arraigned on charges of gun possession and remanded until a subsequent court proceeding, at which bail was set in the

---

1. Officer Moreno did not produce his memo book at his deposition, and acknowledged that losing a memo book constituted a command infraction. He did not recall whether the facts and circumstances surrounding the incident were reflected in his memo book. At trial, he testified that his memo book did not contain any observations concerning the seizure of the gun atop the garbage bags.

amount of $10,000 bond or $5,000 cash. Unable to make bail, plaintiff remained incarcerated for 247 days.

While incarcerated, plaintiff underwent strip searches and cavity inspections. He became depressed and had difficulty sleeping. He had to appear in court 12 times. On January 28, 2010, eight months after his arrest, plaintiff was acquitted of all charges by a jury. DNA testing did not link plaintiff to the weapon recovered at the scene.

On or about November 4, 2011, plaintiff commenced the instant action alleging, inter alia, false arrest, false imprisonment and malicious prosecution. On or about November 1, 2013, defendants moved for summary judgment dismissing the complaint, arguing that probable cause existed by virtue of Moreno's testimony that he observed plaintiff drop an object onto a pile of garbage, and then discovered a firearm on top of the garbage.

The motion court denied defendants' motion for summary judgment in its entirety, holding that "conflicting, specific factual references" in the papers raised triable issues of fact. We affirm in large part, modifying only to grant the motion to dismiss the claim for excessive force.

Where there is conflicting evidence concerning the existence of probable cause to arrest the plaintiff, from which reasonable persons might draw different inferences, the question is one for the jury (see *Parkin v Cornell Univ.*, 78 NY2d 523, 529 [1991], citing *Veras v Truth Verification Corp.*, 87 AD2d 381, 384 [1st Dept 1982], *affd* 57 NY2d 947 [1982]). The parties' differing versions of the events leading to plaintiff's arrest raise a triable issue of fact whether the officers had probable cause to believe that plaintiff was in possession of a gun, precluding summary dismissal of the false arrest and false imprisonment claims (see *Musto v Arakel*, 184 AD2d 243, 243 [1st Dept 1992]). "Presence in a public place does not itself prove dominion and control over contraband discovered there" (*People v Pearson*, 75 NY2d 1001, 1002 [1990]). It is well settled that to support a charge of constructive possession, "the People must show that the defendant exercised dominion or control over the property by a sufficient level of control over the area in which the contraband is found or over the person from whom the contraband is seized" (*People v Manini*, 79 NY2d 561, 573 [1992] [internal quotation marks omitted]). The dissent claims that plaintiff does nothing more than deny his guilt in conclusory terms. However, crucial facts preceding plaintiff's arrest are in dispute, including whether he dropped an object onto the pile of garbage bags. Officer Shea did not observe

plaintiff drop a gun or any other object onto the garbage, even though at the time his partner was engaged with plaintiff he was in close proximity, less than 10 feet away. Shea testified at trial that at no time did he observe an object in plaintiff's hand, even in the moments their unmarked vehicle approached the men, coming within 10 to 15 feet of them. Plaintiff denies discarding any object; Moreno maintains that he did, though his observations are recorded nowhere in the relevant paperwork, as defendants concede.

The elements of a claim for malicious prosecution are (1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for the criminal proceeding; and (4) actual malice (*see Broughton v State of New York*, 37 NY2d 451, 457 [1975], *cert denied sub nom. Schanbarger v Kellogg*, 423 US 929 [1975]). A jury may infer that a defendant acted with actual malice from the fact that there was no probable cause to arrest the plaintiff (*see Martin v City of Albany*, 42 NY2d 13, 17 [1977]; *Lundgren v Margini*, 30 AD3d 476, 477 [2d Dept 2006] [error to grant motion for summary judgment dismissing malicious prosecution claim where triable issue of fact existed as to whether there was probable cause to arrest the plaintiff, noting that the lack of probable cause could support an inference of actual malice]). As noted, there are numerous factual questions concerning whether the police had the requisite probable cause to arrest plaintiff and initiate criminal proceedings. The omissions in the police paperwork and the various versions of events raise questions as to the credibility of the police account of what transpired. Further, the presumption of probable cause attaching upon an accused's arraignment or indictment may be overcome by evidence that "the police witnesses have not made a complete and full statement of facts either to the Grand Jury or to the District Attorney, that they have misrepresented or falsified evidence, that they have withheld evidence or [that they have] otherwise acted in bad faith" (*Maxwell v City of New York*, 156 AD2d 28, 34 [1st Dept 1990] [internal quotation marks omitted]). Since the police paperwork admittedly omitted mention of Detective Moreno's observations, there is a question as to whether Shea's testimony before the grand jury was a full and complete statement of the facts.

The issue of fact as to probable cause for the arrest precludes summary dismissal of the assault and battery claim (*see Johnson v Suffolk County Police Dept.*, 245 AD2d 340, 341 [2d Dept 1997]), as well as the claim of a violation of 42 USC § 1983

against the individual officers (*see Narvaez v City of New York*, 83 AD3d 516, 517 [1st Dept 2011]).[2]

The claim of excessive force should be dismissed. " '[A]nalyzed under the Fourth Amendment and its standard of objective reasonableness' " (*Rivera v City of New York*, 40 AD3d 334, 341 [1st Dept 2007], *lv dismissed* 16 NY3d 782 [2011], quoting *Ostrander v State of New York*, 289 AD2d 463, 464 [2d Dept 2001]), even assuming probable cause for the arrest, the officers' use of tight handcuffing on plaintiff was not unreasonable (*see Ostrander*, 289 AD2d at 464). Concur—Acosta, J.P., Manzanet-Daniels and Kapnick, JJ.

Andrias, J., dissents in part in a memorandum as follows: The majority modifies the order appealed to dismiss plaintiff's excessive force claim, and otherwise affirms the denial of defendants' motion for summary judgment. Because I believe that defendants should also be granted summary judgment dismissing plaintiff's causes of action for malicious prosecution, false arrest and imprisonment, assault, battery, and violation of 42 USC § 1983 as against the individual officers, I respectfully dissent in part.

On the night of May 25, 2009, Detective Moreno, Lieutenant Davis and Officer Shea were on duty in plainclothes in an unmarked car. Having received reports of shots fired in the vicinity earlier that evening, the officers decided to patrol an area where a large outdoor party was taking place.

The officers drove slowly down Mount Hope Place, where Moreno noticed Jamal Joseph, holding a bottle of alcohol and standing about 10 feet apart from plaintiff, near a van. After Joseph told them that "[w]e don't have no problem here[,] [w]e're just hanging out having a good time," the officers continued on their way. However, Moreno decided that they should go back to talk to Joseph because he "seemed a little over anxious to prove that he wasn't doing anything wrong."

When the officers returned, they saw Joseph duck and throw something that sounded metallic as it hit and slid on the ground. After Moreno saw a gun under the van, he gave the code for an arrest. Moreno then saw plaintiff with his hand extended, dropping something that sounded heavy as it hit the garbage bags in front of him. When Moreno looked down, he saw a gun, which was the only item that he observed on top of the bags, and Shea arrested plaintiff. The criminal complaint

---

2. Plaintiff voluntarily withdrew his section 1983 claim and his negligent hiring and supervision claims against the City of New York and those claims accordingly are not before us.

affidavit signed by Shea stated that plaintiff had "custody and control" of a pistol but did not specifically mention that Moreno saw plaintiff discard a weapon.

The indictment charged plaintiff, who did not testify before the grand jury, with criminal possession of a weapon in the second and fourth degrees. By order dated July 28, 2009, plaintiff's application to inspect the grand jury minutes and for dismissal of the indictment or reduction of the charges was "granted to the extent that the Court . . . examined the Grand Jury minutes in camera" and found that "the evidence before the Grand Jury was sufficient to establish the crimes charged, that the Grand Jury was properly instructed on the law, and that the proceedings were proper" (emphasis omitted). It is particularly significant that although plaintiff's counsel was provided with the grand jury minutes as *Rosario* (*People v Rosario*, 9 NY2d 286 [1961], *cert denied* 368 US 866 [1961]) material, he has not produced the minutes in this litigation, choosing instead to rely, as does the majority, on purported deficiencies in the police department's paperwork to challenge the existence of probable cause.

After a trial, at which plaintiff did not testify, the jury acquitted him of both counts. Plaintiff then filed this action, asserting, as is relevant here, claims sounding in assault, battery, and the use of excessive force (first and second causes of action); false arrest and imprisonment (third cause of action); malicious prosecution (fourth cause of action); and violation of his rights under 42 USC § 1983 as against the individual police officers (fifth cause of action).

According to plaintiff's General Municipal Law § 50-h hearing testimony, on the night of his arrest, he approached Joseph, whom he did not know, to ask if had seen the friend who had invited plaintiff to the barbeque. Before he walked "not even a foot," the officers pulled up and told him to "hold it right there." Shea and Moreno then threw plaintiff and Joseph against the wall and arrested plaintiff, even though nothing was found when they searched him. At the precinct, plaintiff learned that he was being charged with possessing a loaded gun that had been found at the scene, and he denied the charge.

"[A] plaintiff asserting a common-law claim for false arrest must demonstrate that: the defendant intended to confine the plaintiff; the plaintiff was conscious of the confinement; the plaintiff did not consent to the confinement; and the confinement was not otherwise privileged" (*Marrero v City of New York*, 33 AD3d 556, 556-557 [1st Dept 2006]; *see also Broughton v State of New York*, 37 NY2d 451, 456 [1975], *cert denied sub*

*nom. Schanbarger v Kellogg*, 423 US 929 [1975]). "Where, as here, an arrest is made without a warrant, '[t]he existence of probable cause serves as a legal justification for the arrest and an affirmative defense to the claim' " (*Nolasco v City of New York*, 131 AD3d 683, 684 [2d Dept 2015], quoting *Martinez v City of Schenectady*, 97 NY2d 78, 85 [2001]).

"Probable cause does not require proof sufficient to warrant a conviction beyond a reasonable doubt but merely information sufficient to support a reasonable belief that an offense has been or is being committed" (*People v Bigelow*, 66 NY2d 417, 423 [1985]; *see also Colon v City of New York*, 60 NY2d 78, 82 [1983]). It requires a showing of "such grounds as would induce an ordinarily prudent and cautious person, under the circumstances, to believe that [the accused] had committed the [crime]" (*Smith v County of Nassau*, 34 NY2d 18, 25 [1974]). An arrest "need not be supported by information and knowledge which, at the time, excludes all possibility of innocence and points to the [arrested person's] guilt beyond a reasonable doubt" (*People v Nowell*, 90 AD2d 735, 736 [1st Dept 1982] [internal quotation marks omitted]).

Here, defendants established their prima facie entitlement to summary judgment dismissing the cause of action alleging false arrest and imprisonment by submitting evidence demonstrating that the police had probable cause to arrest plaintiff. Moreno testified at his deposition that he saw plaintiff discard an object onto garbage bags piled on the sidewalk, and that upon inspection he discovered that the object, which was the only item on top of the bags, was a gun. Moreno relayed his observations to Shea, the arresting officer, who also saw the gun on the bags.

Plaintiff failed to raise a triable issue of fact in opposition. His acquittal after trial does not in and of itself negate the existence of probable cause (*see Jenkins v City of New York*, 2 AD3d 291, 292 [1st Dept 2003] ["Despite plaintiff's subsequent acquittal, there was nonetheless probable cause for the arresting officers' actions"]).

The majority finds that plaintiff's assertion that he did not discard the gun suffices to raise an issue of fact as to probable cause. However, the "mere denial by the accused of the complainant's claims will not constitute materially impeaching circumstances or grounds for questioning the complainant's credibility so as to raise a question of fact as to probable cause" (*Medina v City of New York*, 102 AD3d 101, 105 [1st Dept 2012] [internal quotation marks omitted]; *see also Nolasco v City of New York*, 131 AD3d at 685). Other than his claim of innocence,

plaintiff offered no evidence that materially contradicted Moreno's observations that plaintiff had discarded an object onto garbage bags, which sounded heavy as it landed, and was immediately discovered to be a gun.

The majority disagrees, citing Shea's testimony that at no time did he observe plaintiff with an object in his hand or see him drop a gun or anything else on the garbage bags. However, pursuant to the fellow officer rule, "a police officer can make a lawful arrest even without personal knowledge sufficient to establish probable cause, so long as the officer is acting upon the direction of or as a result of communication with a fellow officer or another police agency in possession of information sufficient to constitute probable cause for the arrest" (*People v Ketcham*, 93 NY2d 416, 419 [1999] [internal quotation marks omitted]; *People v Rosario*, 78 NY2d 583, 588 [1991], *cert denied* 502 US 1109 [1992]). Shea explained at his deposition that he saw plaintiff and Joseph begin to separate when the officers were about two car lengths away. After Shea saw Joseph dip down and heard a metallic object hit the ground, he apprehended Joseph, who was the focus of his attention, while Moreno engaged with plaintiff. Shea further testified at his deposition that Moreno indicated to him that he saw the second weapon dropped on top of a bag of garbage near where plaintiff was standing, explaining that in sum and substance Moreno said that he saw plaintiff throw the gun onto the bag of garbage. At trial, Shea testified that he personally observed the gun on top of the garbage bags, that it was the only item outside the bags, and that plaintiff was standing just two feet away.

To establish a malicious prosecution claim, a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against the plaintiff; (2) the termination of the proceeding in the plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for the defendant's actions (*Broughton*, 37 NY2d at 457; *Williams v City of New York*, 114 AD3d 852, 853 [2d Dept 2014]). The existence of probable cause for the arrest and prosecution is a complete defense to a malicious prosecution claim (*see Batten v City of New York*, 133 AD3d 803, 805 [2d Dept 2015]; *Spinner v County of Nassau*, 103 AD3d 875, 876-877 [2d Dept 2013]).

Once plaintiff was indicted, the grand jury action created a presumption of probable cause. Indeed, in the criminal case, upon plaintiff's motion, the criminal court reviewed the grand jury minutes and found that the evidence against him was sufficient to support the charges.

To rebut the presumption, it was incumbent on plaintiff to tender evidence establishing that "the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith" (*Colon v City of New York*, 60 NY2d at 82-83 [presumption may be overcome "only by evidence establishing that the police witnesses have not made a complete and full statement of (the) facts either to the Grand Jury or to the District Attorney, that they have misrepresented or falsified evidence, that they have withheld evidence or (that they have) otherwise acted in bad faith"]; *see also Lawson v City of New York*, 83 AD3d 609, 610 [1st Dept 2011], *lv dismissed* 19 NY3d 952 [2012] ["(t)he dismissal of the indictment upon the People's motion, based on the conclusion that the evidence against plaintiff was too weak to establish guilt beyond a reasonable doubt in light of her son's confession that he solely possessed and intended to sell the narcotics recovered by police, does not negate the finding of probable cause"]).

As noted, although they were provided to his counsel as *Rosario* material during his criminal trial, most tellingly plaintiff has not produced the grand jury minutes here. Rather, plaintiff attempts to rebut the presumption by relying on alleged deficiencies in the police paperwork and discrepancies in the officers' testimony. However, "[w]hile the actions of the police in investigating this case were not infallible, the conduct of the police simply did not rise to a level that could be characterized as egregious" (*Batten v City of New York*, 133 AD3d at 806 [internal quotation marks omitted]; *Williams v City of New York*, 114 AD3d at 854). Furthermore, there is no evidence (as opposed to conclusory allegations) to corroborate plaintiff's version of events (*see Brandon v City of New York*, 705 F Supp 2d 261, 273 [SD NY 2010] ["(W)here a plaintiff's only evidence to rebut the presumption of the indictment is his version of events, courts will find such evidence to be nothing more than mere conjecture and surmise that the plaintiff's indictment was procured as a result of conduct undertaken by the defendants in bad faith, which is insufficient to rebut the presumption of probable cause"] [internal quotation marks and alteration omitted]).

While Moreno testified that he did not see plaintiff dispose of a gun, he testified that the object sounded heavy as it landed on the garbage bags, and that upon inspection he saw the gun on the bags. He also testified that he relayed these observations to Shea. Thus, Shea's testimony that Moreno told him that Mendez discarded a gun is consistent with the totality of Moreno's observations, Shea's own observation of the gun on the trash bags, and plaintiff's proximity to the gun.

Contrary to the finding of the majority, the fact that certain police reports do not expressly state that Moreno saw plaintiff discard an object does not suffice to raise a material issue of fact as to whether the police officers fabricated the evidence, perjured themselves or deviated egregiously from acceptable police practice (*see generally Nolasco*, 131 AD3d at 685 [minor inconsistencies in NYPD complaint reports did not require further inquiry to confirm commission of a crime before making arrest]). Although none of the reports indicated that Moreno saw plaintiff drop a gun, the complaint report, arrest report and lab report request forms stated that plaintiff and Joseph were found to be in possession of two firearms. A lab examination request form and the evidence collection team report, both signed on the day of plaintiff's arrest, further noted that one gun was found under a red car and the other atop a trash pile. The criminal complaint, signed by Shea, stated that plaintiff "had in his custody and control" a loaded black semiautomatic pistol. Furthermore, Shea's explanation of what Moreno had told him and plaintiff's proximity to where the gun was found were sufficient to support the officers' conclusion that plaintiff possessed the gun.

The purported inconsistencies in the officers' testimony about whether Moreno used a flashlight, or whether the gun was "tossed" or "thrown" by plaintiff, did not prove perjury or otherwise rebut the presumption of probable cause; at most, they showed that the officers had some differing recollections about incidental aspects of the arrest.

That the DNA report did not link plaintiff to the gun does not raise an issue of fact as to probable cause, even if it may have influenced the jury in finding that plaintiff's guilt was not proven beyond a reasonable doubt (*see Williams v City of New York*, 114 AD3d at 854 [City entitled to summary judgment dismissing the malicious prosecution cause of action because the City showed that the suspect was indicted by a grand jury for the subject incident, thus creating a presumption of probable cause, and the fingerprint analysis report did not exonerate him]). As in *Williams*, the DNA testing in this case did not establish plaintiff's innocence. Rather, as the DNA stipulation states, insufficient material was present on the gun to allow genetic analysis, and therefore there was no DNA match with plaintiff or anyone else. This evidence, at best, offered conflicting proof regarding guilt beyond a reasonable doubt, but did not rebut the presumption of probable cause.

Because there was probable cause, the claim of a violation of 42 USC § 1983 as against the individual officers should also be

dismissed (*see Narvaez v City of New York*, 83 AD3d 516, 517 [1st Dept 2011]; *Manganiello v City of New York*, 612 F3d 149, 160-162 [2d Cir 2010]). In addition, because the arrest of plaintiff was lawful, the individual officers did not commit an assault or battery when they touched plaintiff during that arrest (*compare Johnson v Suffolk County Police Dept.*, 245 AD2d 340, 341 [2d Dept 1997]), and therefore those claims should be dismissed as well.

As the majority holds, the claim of excessive force should also be dismissed. " '[A]nalyzed under the Fourth Amendment and its standard of objective reasonableness' " (*Rivera v City of New York*, 40 AD3d 334, 341 [1st Dept 2007], *lv dismissed* 16 NY3d 782 [2011], quoting *Ostrander v State of New York*, 289 AD2d 463, 464 [2d Dept 2001]), the officers' use of tight handcuffing on plaintiff was reasonable (*see Ostrander*, 289 AD2d at 464).