Charles O. v State of New York (2025 NY Slip Op 50700(U))

[*1]

Charles O. v State of New York

2025 NY Slip Op 50700(U)

Decided on April 7, 2025

Court Of Claims

Calderon, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 7, 2025
Court of Claims

Charles O., KIMBERLY O., and 
 "M.O.", AN INFANT OVER THE AGE OF (14) YEARS BY HIS MOTHER AND NATURAL GUARDIAN, KIMBERLY O., Claimants,

against
The State of New York, Defendant.

Claim No. 137513

For Claimants:
PHILLIPS & MILLMAN, LLP
By: Jeffrey T. Millman, Esq.
For Defendant:
LETITIA JAMES, Attorney General of the State of New York
By: LaDonna S. Sandford, Assistant Attorney General
 
Francisco Calderon, J.

Claimants Charles O., Kimberly O., and M.O. brought this claim alleging several causes of action including: violation of 42 USC § 1983; negligence; negligent hiring, supervision, and training; assault and battery; use of excessive force; false imprisonment; intentional/negligent infliction of emotional distress; and, derivatively, loss of services. Briefly, claimants allege that two State Troopers injured Charles O. while detaining him in the early morning hours on December 1, 2021. Following discovery, defendant moved for summary judgment to dismiss the claim. In response, claimants withdrew their claims for violation of 42 USC § 1983 and for intentional/negligent infliction of emotional distress, but otherwise opposed the motion. For the reasons stated below, defendant's motion is granted with respect to the negligence and negligent hiring, retention, and supervision claims and denied with respect to the false arrest/false imprisonment, excessive force, and assault and battery claims.
FACTUAL BACKGROUND
In support of its motion, defendant submits the depositions of Charles O., Kimberly O., the two State Troopers, and their sergeant station commander, along with footage from the body-worn cameras worn by both State Troopers. Troopers Thomas Raymond and Eric Piotrowski both stated that they were directed to respond to a call from claimants' neighbor, who alleged that claimants had moved his trash can. Because the Troopers were occupied with a different matter, they were unable to meet with the neighbor until sometime after 1:00 a.m. Although aware it was early in the morning, they decided to continue the investigation by speaking with claimants. Piotrowski indicated that it was an appropriate time to speak to claimants because the Troopers "work around the clock" (Affirm in Supp of Mot, Exh I, Depo of Piotrowski, 55).
According to the Troopers, they turned on their cruiser lights as they pulled into claimants' driveway in order to make their presence known. Raymond rang the doorbell and announced twice that they were the State Police. Raymond could hear the claimants' dog barking from inside. Piotrowski shined his flashlight into the window after ringing the doorbell. According to claimants, Kimberly O. awoke when she heard the dog barking. She walked out into the hallway, where she found her son M.O., and they could see flashlights aimed into their windows below. Mrs. O. woke up her husband, Charles O. and told him that she thought they were being robbed. Mrs. O. handed Mr. O. his handgun and he proceeded downstairs while Mrs. O. and M.O. remained upstairs. Mr. O. did not hear a knock on the door or the doorbell ring. The body worn camera footage does not begin until sometime after the Troopers allegedly rang the doorbell, just before Mr. O. opened the door. Although not visible from the porch, the footage does show that the red lights of the Trooper's vehicle were turned on. Mr. and Mrs. O., in the footage, repeatedly question why the Troopers didn't ring their doorbell.
The Troopers and Mr. O. agree, as supported by the video, that Mr. O. opened the door with his handgun pointed at the Troopers. The Troopers yelled at Mr. O. to drop the gun and Piotrowski radioed for backup. Mr. O. went back into the house and shut the door. In his deposition, Mr. O. said that, upon learning that the State Police were at the door, he went back into the house, put the gun down, and then reemerged with his hands above his head. As seen in the camera footage, the Troopers yell at Mr. O. to get down on the ground when he comes back out of the house. Although Mr. O. largely kept his hands above his head, he did not comply with the order and yelled at the Troopers. Mr. O. sat down on a box on the front porch with his hands above his head. Around the same time, Mrs. O. appeared at the front door, holding a long gun pointed up toward the ceiling and asked what was wrong. Raymond instructed her to put the gun down and she complied. The Troopers instructed Mr. O. to get down on his knees and put his hands behind his back and Mr. O. initially refused to comply. After receiving instructions several more times, Mr. O. got down on his knees and put his hands behind his back, but continued to yell at the Troopers.
Piotrowski attempted to place handcuffs on Mr. O. In the video, Piotrowski can be seen successfully placing the cuffs on Mr. O.'s left hand. However, when Piotrowski grabbed his right arm, Mr. O. pulled his arms apart. The two Troopers forced Mr. O. to the ground in order to place the handcuffs on him. The struggle itself is not well-captured on video. Mr. O. testified that, as he was placed in handcuffs, he felt a sharp pain in his right shoulder and neck and then both officers jumped on top of him. He said that the officers wrestled him to the ground, smashed his head against a table on the porch, and forced his hands behind his back. Piotrowski stated that he and Raymond needed to restrain Mr. O. because he resisted arrest. They both testified that, because Mr. O. had a gun, they thought it was better to get control of the situation [*2]before determining what crime, if any, had been committed. After Mr. O. had been restrained, Piotrowski witnessed a laceration to Mr. O.'s head and Mr. O. stated that he experienced pain in several places on his body, including his ankle. However, neither Trooper ever asked Mr. O. if he needed medical attention.
After Mr. O. was placed in handcuffs, additional police officers arrived at the scene and eventually the situation calmed down. Sergeant station commander Talia Duke-Ferris arrived at some point and spoke to claimants. She eventually directed a different officer to remove Mr. O.'s handcuffs. She also stated that she observed the laceration on Mr. O.'s head and asked him whether he needed medical attention. Duke-Ferris stated that, had the Troopers consulted her, she would have advised them not to investigate the garbage can complaint at 3:00 a.m. However, she did not think it was uncommon to place someone in handcuffs after they pointed a gun at a Trooper. Once the police officers left, Mr. O. went to the emergency room to seek medical attention.
In response, claimants additionally submit the deposition transcript of M.O. and Mr. O.'s medical records. M.O. witnessed most of the events at the door and generally confirmed the account given by his parents. As part of the medical record, there are pictures of the laceration to Mr. O.'s head and a different wound on his ankle. As a result of the injuries he sustained from the Troopers, Mr. O. needed to replace his dental implant and received ankle reconstruction surgery approximately 15 months after the accident.

LAW AND ANALYSIS
The proponent of a motion for summary judgment bears the initial burden of establishing the right to judgment as a matter of law by tendering sufficient evidence, in admissible form, demonstrating the absence of material issues of fact from the case (see Matter of Eighth Jud. Dist. Asbestos Litig., 33 NY3d 488, 496 [2019], citing Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]). On such motion, "the facts must be viewed in the light most favorable to the non-moving party and every available inference must be drawn" in favor of the non-moving party (Matter of Eigth Jud. Dist. Asbestos Litig., 33 NY3d 488 at 496 [internal quotation marks and citations omitted]). Once the moving party has demonstrated its prima facie entitlement to summary judgment, the burden shifts to the opposing party to demonstrate the existence of a triable issue of material fact (see Vega v Restani Constr. Corp., 18 NY3d 499, 503 [2012], citing Alvarez, 68 NY2d at 324).
A. Negligence
Defendant correctly argues that where, as here, a claimant's causes of action sound in false arrest or false imprisonment, the claimant is not permitted to seek damages under a general negligence theory of liability (Moreland v State of New York, 200 AD3d 1362, 1365 [3d Dept 2021], lv denied 38 NY3d 906 [2022]; Heath v State of New York, 229 AD2d 912, 912 [4th Dept 1996]). Accordingly, defendant's motion for summary judgment to dismiss the claim of negligence is granted.
B. Negligent Hiring, Retention, and Supervision
In general, "where an employer is liable for the employee's negligence under a theory of respondeat superior, the [claimant] may not proceed with a cause of action to recover damages for negligent hiring and retention" (Tabchouri v Hard Eight Rest. Co., LLC, 219 AD3d 528, 533 [2d Dept 2023] [internal quotation marks and citation omitted]; see Junmei Zhang v City of New York, 198 AD3d 504, 505 [1st Dept 2021]). Here, as defendant acknowledges, it is responsible for the Troopers actions under these circumstances because they were acting within the scope of [*3]their employment (see Kerzhner v G4S Govt. Solutions, Inc., 160 AD3d 505, 505 [1st Dept 2018]). Therefore, this cause of action must be dismissed and defendant's motion for summary judgment to dismiss the claim for negligent hiring, retention, and supervision is granted.
C. False Imprisonment/False Arrest
To establish a claim for false imprisonment or false arrest,[FN1]
a claimant must establish "(1) the defendant intended to confine [them], (2) the [claimant] was conscious of the confinement, (3) the [claimant] did not consent to the confinement and (4) the confinement was not otherwise privileged" (Broughton v State of New York, 37 NY2d 451, 456-457 [1975], cert denied 423 US 929 [1975]; see De Lourdes Torres v Jones, 26 NY3d 742, 759 [2016]). With respect to privilege for a false imprisonment/arrest claim, "an act of confinement is privileged if it stems from a lawful arrest supported by probable cause" (De Lourdes Torres, 26 NY3d at 759). When an arrest is made pursuant to a lawful warrant, a presumption arises that there is probable cause to support the arrest (see Mahoney v State of New York, 147 AD3d 1289, 1291 [3d Dept 2017], lv denied 30 NY3d 906 [2017]; Martinez v City of New York, 153 AD3d 803, 806 [2d Dept 2017]). In contrast, when an arrest occurs in the absence of a warrant, "the presumption arises that such an arrest . . . [is] unlawful" (Broughton, 37 NY2d at 458) and defendant must rebut this presumption by a showing of probable cause (see Moulton v State of New York, 114 AD3d 115, 120 [3d Dept 2013]; Holland v City of Poughkeepsie, 90 AD3d 841, 845 [2d Dept 2011]).
Probable cause is evaluated under the totality of the circumstances and can be demonstrated by "such facts and circumstances as would lead a reasonably prudent person in like circumstances to believe [claimant] guilty"; although it does not require proof beyond a reasonable doubt, there must be "information sufficient to support a reasonable belief that an offense has been or is being committed by the suspected individual" (De Lourdes Torres, 26 NY3d at 759 [internal quotation marks and citations omitted]; see Colon v City of New York, 60 NY2d 78, 82 [1983]). Probable cause must exist at the time of the arrest; however, "evidence of a subsequent arraignment or indictment is admissible as some proof of the presence of probable cause" (Broughton, 37 NY2d at 458). By the same token, "evidence of a subsequent dismissal, acquittal or reversal on appeal would also be admissible to refute the affirmative defense of justification" (id.). A motion for summary judgment will be denied and the question of probable cause will be left to the finder of fact "[w]here there is conflicting evidence concerning the existence of probable cause to arrest the [claimant], from which reasonable persons might draw different inferences" (Mendez v City of New York, 137 AD3d 468, 470 [1st Dept 2016], citing Parkin v Cornell Univ., 78 NY2d 523, 529 [1991]).
Here, there is no real dispute with respect to the first three elements of a false imprisonment or false arrest claim—the Troopers intended to confine Mr. O., he was conscious of the confinement, and he did not consent to it. The only disagreement among the parties is whether the arrest was privileged, which rests on whether it was supported by probable cause. In general, the weight of authority suggests a finding of probable cause requires an arrest for a cognizable offense (see e.g. Flavin v City of New York, 171 AD3d 633, 634 [1st Dept 2019] [plaintiff arrested for sale of drugs]; Holland v City of Poughkeepsie, 90 AD3d 841, 845-846 [2d Dept 2011] [plaintiff charged with disorderly conduct]; Quigley v City of Auburn, 267 AD2d [*4]978, 979 [4th Dept 1999] [probable cause plaintiff had committed menacing in the second degree]). There are some cases where the presence of a firearm provides probable cause for an arrest. However, those cases concerned arrests that were made in public, often after witnesses had called the police, and where it appears—whether or not explicitly stated—that there was probable cause to arrest for criminal possession of a weapon (see Mendez v City of New York, 137 AD3d 468, 470 [1st Dept 2016]; Grimes v City of New York, 106 AD3d 441, 441 [1st Dept 2013]; Lorensen v State of New York, 249 AD2d 762, 763-764 [3d Dept 1998], lv denied 92 NY2d 807 [1998]). Notably, defendant does not allege that the police had probable cause to arrest Mr. O. for criminal possession of a weapon and instead only alleges that there may be probable cause for menacing a police officer. Given this background, this Court does not share defendant's view that the presence of a gun alone is sufficient to provide the police with probable cause to arrest, in the absence of a specific criminal offense. Therefore, this Court's assessment turns on whether there was probable cause to arrest Mr. O. for menacing a police officer.
To be guilty of menacing a police officer, a person must "intentionally place[] or attempt[] to place a police officer . . . in reasonable fear of physical injury, serious physical injury or death by displaying a deadly weapon . . . whether operable or not, where such officer was in the course of performing [their] official duties and the [person] knew or reasonably should have known that such victim was a police officer" (Penal Law § 120.18). Viewing the evidence in the light most favorable to claimants, there is a clear factual discrepancy concerning whether Mr. O. knew or reasonably should have known that he aimed his gun at a police officer. Accepting claimants' testimony as true, there is evidence that the Troopers did not ring the doorbell or announce their presence and thereby gave claimants no reason to believe that the Troopers were at their door. Additionally, Mr. O.'s actions—putting the gun away once he learned that the Troopers were at his door and reemerging from the house with his hands above his head—are consistent with the theory that Mr. O. did not initially know the Troopers were there and may have been sufficient to alert the Troopers to the fact that he was not aware of who they were. The foregoing, combined with the unusual hour of the Troopers visit, creates a question of fact about whether the Troopers had probable cause for the arrest (see Idelfonso v City of New York, 187 AD3d 576, 577 [1st Dept 2020]; Mendez, 137 AD3d at 470; Holland, 90 AD3d at 845-846), and therefore the evidence is insufficient, at this juncture, to rebut the presumption that the warrantless arrest was unlawful (see Shaw v City of Rochester, 200 AD3d 1551, 1552 [4th Dept 2021], appeal dismissed 38 NY3d 1181 [2022]). Similarly, the existence of triable questions of fact with respect to probable cause precludes an award of summary judgment on the ground of qualified immunity (see Ballinger v City of Mount Vernon, 233 AD3d 736, 738-739 [2d Dept 2024]; Macareno v City of New York, 187 AD3d 1164, 1166 [2d Dept 2020]; Murray v City of New York, 154 AD3d 591, 592 [1st Dept 2017]). Therefore, defendant's motion for summary judgment is denied with respect to the false arrest and false imprisonment claim.
D. Assault, Battery, and Excessive Force
A claim that a police officer used excessive force in conducting an arrest is "analyzed under the Fourth Amendment and its standard is objective reasonableness" (Holland, 90 AD3d at 844 [internal quotation marks and citation omitted]; see Shirvanion v State of New York, 64 AD3d 1113, 1114 [3d Dept 2009]). Reasonableness "must be judged from the perspective of a reasonable officer on the scene and depends on the facts in the particular case" (Relf v City of Troy, 169 AD3d 1223, 1224 [3d Dept 2019] [internal quotation marks and citation omitted]; see [*5]Holland, 90 AD3d at 844). Whether there was probable cause for the arrest does not bar a cause of action for use of excessive force (see Tsachalis v City of Mount Vernon, 293 AD2d 525, 526 [2d Dept 2002]; Bennett v New York City Hous. Auth., 245 AD2d 254, 255 [2d Dept 1997]). The question of whether the use of force was reasonable is "intensely factual" and therefore "generally best left for a jury to decide" (Relf, 169 AD3d at 1224 [internal quotation marks and citation marks omitted]).
A battery is "the unjustified touching of another person, without that person's consent, with the intent to cause a bodily contact that a reasonable person would find offensive," whereas "assault involves putting a person in fear of a battery" (Rivera v State of New York, 34 NY3d 383, 389 [2019] [internal quotation marks and citation omitted]; see Macareno v City of New York, 187 AD3d 1164, 1167 [2d Dept 2020]). If an arrest is lawful, "intentional contact with the arrested person does not constitute assault and battery, provided such force is reasonable" (Fischetti v City of New York, 199 AD3d 891, 893 [2d Dept 2021]). However, "[a] claim predicated on assault and battery may be based upon contact during an unlawful arrest" (Macareno v City of New York, 187 AD3d 1164, 1167 [2d Dept 2020]; accord Mac v County of Suffolk, 233 AD3d 850, 853-854 [2d Dept 2024]).
On the excessive force claim, defendant established that the Troopers were required to use a degree of force while taking Mr. O. into custody. Both Troopers testified that Mr. O. resisted arrest and he can be clearly seen in the camera footage pulling his arms apart as he is being handcuffed. Although Mr. O. stated that he pulled his hands apart because he felt a sharp pain in his neck and shoulder, the Troopers could not have known that was the reason for him apparently resisting arrest. However, there is a question of fact in the record about whether the force used to ultimately handcuff Mr. O.—which involved both Troopers tackling him the ground and causing injuries to both his head and ankle such that the later required reconstructive surgery—was objectively reasonable (see Murray v City of New York, 154 AD3d 591, 592 [1st Dept 2017]; Brown v Hoffman, 122 AD3d 1149, 1153-1154 [3d Dept 2014]). Therefore, the motion for summary judgment with respect to the excessive force claim is denied.
As for the assault and battery claims, whether the arrest is lawful is connected to the question of whether there is probable cause for the arrest. Because there are triable issues of fact as to whether there was probable cause for the arrest, summary judgment is precluded on the assault and battery claims (see Luers v City of New York, 205 AD3d 898, 900 [2d Dept 2022]; see also Wyllie v District Attorney of County of Kings, 2 AD3d 714, 718-719 [2d Dept 2003]). In any event, even if the arrest were lawful, the motion for summary judgment to dismiss these claims would still be denied because there are questions of fact, as discussed above, as to whether the force used was reasonable.

CONCLUSION
Based upon the foregoing, defendant's motion for summary judgment to dismiss the claim is granted with respect to the negligence and negligent hiring, retention, and supervision claims and denied with respect to the false arrest/false imprisonment, excessive force, and assault and battery claims. The Court will set this matter down for a trial on the issue of liability as soon as reasonably practicable. This constitutes the Decision and Order of this Court.
Saratoga Springs, New York
April 7, 2025
FRANCISCO CALDERON
Judge of the Court of Claims
The following papers were read and considered by the Court:
1. Defendant's Notice of Motion, Attorney's Supporting Affirmation, and Exhibits
2. Claimant's Attorney's Affirmation in Opposition to Motion and Exhibits
3. Defendant's Attorney's Reply Affirmation

Footnotes

Footnote 1: "False arrest and false imprisonment are two different names for the same common-law tort" (Ballinger v City of Mount Vernon, 233 AD3d 736, 737 [2d Dept 2024]).