Charles O. v State of New York (2025 NY Slip Op 50700(U))

[*1]

Charles O. v State of New York

2025 NY Slip Op 50700(U) [85 Misc 3d 1273(A)]

Decided on April 7, 2025

Court Of Claims

Calderon, J.

Published by New York State Law Reporting
Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be
published in the printed Official Reports.

Decided on April 7, 2025
Court of Claims

Charles O.,
KIMBERLY O., and 
 "M.O.", AN INFANT OVER THE AGE OF (14) YEARS BY HIS
MOTHER AND NATURAL GUARDIAN, KIMBERLY O., Claimants,

against
The State of New York,
Defendant.

Claim No. 137513

For Claimants:
PHILLIPS & MILLMAN, LLP
By: Jeffrey
T. Millman, Esq.
For Defendant:
LETITIA JAMES, Attorney General
of the State of New York
By: LaDonna S. Sandford, Assistant Attorney General
 
Francisco Calderon, J.

Claimants Charles O., Kimberly O., and M.O. brought this claim alleging several
causes of action including: violation of 42 USC § 1983; negligence; negligent
hiring, supervision, and training; assault and battery; use of excessive force; false
imprisonment; intentional/negligent infliction of emotional distress; and, derivatively,
loss of services. Briefly, claimants allege that two State Troopers injured Charles O.
while detaining him in the early morning hours on December 1, 2021. Following
discovery, defendant moved for summary judgment to dismiss the claim. In response,
claimants withdrew their claims for violation of 42 USC § 1983 and for
intentional/negligent infliction of emotional distress, but otherwise opposed the motion.
For the reasons stated below, defendant's motion is granted with respect to the negligence
and negligent hiring, retention, and supervision claims and denied with respect to the
false arrest/false imprisonment, excessive force, and assault and battery
claims.
FACTUAL
BACKGROUND
In support of its motion, defendant submits the
depositions of Charles O., Kimberly O., the two State Troopers, and their sergeant station
commander, along with footage from the body-worn cameras worn by both State
Troopers. Troopers Thomas Raymond and Eric Piotrowski both stated that they were
directed to respond to a call from claimants' neighbor, who alleged that claimants had
moved his trash can. Because the Troopers were occupied with a different matter, they
were unable to meet with the neighbor until sometime after 1:00 a.m. Although aware it
was early in the morning, they decided to continue the investigation by speaking with
claimants. Piotrowski indicated that it was an appropriate time to speak to claimants
because the Troopers "work around the clock" (Affirm in Supp of Mot, Exh I, Depo of
Piotrowski, 55).
According to the Troopers, they turned on their cruiser lights as they pulled into
claimants' driveway in order to make their presence known. Raymond rang the doorbell
and announced twice that they were the State Police. Raymond could hear the claimants'
dog barking from inside. Piotrowski shined his flashlight into the window after ringing
the doorbell. According to claimants, Kimberly O. awoke when she heard the dog
barking. She walked out into the hallway, where she found her son M.O., and they could
see flashlights aimed into their windows below. Mrs. O. woke up her husband, Charles
O. and told him that she thought they were being robbed. Mrs. O. handed Mr. O. his
handgun and he proceeded downstairs while Mrs. O. and M.O. remained upstairs. Mr. O.
did not hear a knock on the door or the doorbell ring. The body worn camera footage
does not begin until sometime after the Troopers allegedly rang the doorbell, just before
Mr. O. opened the door. Although not visible from the porch, the footage does show that
the red lights of the Trooper's vehicle were turned on. Mr. and Mrs. O., in the footage,
repeatedly question why the Troopers didn't ring their doorbell.
The Troopers and Mr. O. agree, as supported by the video, that Mr. O. opened the
door with his handgun pointed at the Troopers. The Troopers yelled at Mr. O. to drop the
gun and Piotrowski radioed for backup. Mr. O. went back into the house and shut the
door. In his deposition, Mr. O. said that, upon learning that the State Police were at the
door, he went back into the house, put the gun down, and then reemerged with his hands
above his head. As seen in the camera footage, the Troopers yell at Mr. O. to get down
on the ground when he comes back out of the house. Although Mr. O. largely kept his
hands above his head, he did not comply with the order and yelled at the Troopers. Mr.
O. sat down on a box on the front porch with his hands above his head. Around the same
time, Mrs. O. appeared at the front door, holding a long gun pointed up toward the
ceiling and asked what was wrong. Raymond instructed her to put the gun down and she
complied. The Troopers instructed Mr. O. to get down on his knees and put his hands
behind his back and Mr. O. initially refused to comply. After receiving instructions
several more times, Mr. O. got down on his knees and put his hands behind his back, but
continued to yell at the Troopers.
Piotrowski attempted to place handcuffs on Mr. O. In the video, Piotrowski can be
seen successfully placing the cuffs on Mr. O.'s left hand. However, when Piotrowski
grabbed his right arm, Mr. O. pulled his arms apart. The two Troopers forced Mr. O. to
the ground in order to place the handcuffs on him. The struggle itself is not well-captured
on video. Mr. O. testified that, as he was placed in handcuffs, he felt a sharp pain in his
right shoulder and neck and then both officers jumped on top of him. He said that the
officers wrestled him to the ground, smashed his head against a table on the porch, and
forced his hands behind his back. Piotrowski stated that he and Raymond needed to
restrain Mr. O. because he resisted arrest. They both testified that, because Mr. O. had a
gun, they thought it was better to get control of the situation [*2]before determining what crime, if any, had been committed.
After Mr. O. had been restrained, Piotrowski witnessed a laceration to Mr. O.'s head and
Mr. O. stated that he experienced pain in several places on his body, including his ankle.
However, neither Trooper ever asked Mr. O. if he needed medical attention.
After Mr. O. was placed in handcuffs, additional police officers arrived at the scene
and eventually the situation calmed down. Sergeant station commander Talia Duke-Ferris
arrived at some point and spoke to claimants. She eventually directed a different officer
to remove Mr. O.'s handcuffs. She also stated that she observed the laceration on Mr. O.'s
head and asked him whether he needed medical attention. Duke-Ferris stated that, had
the Troopers consulted her, she would have advised them not to investigate the garbage
can complaint at 3:00 a.m. However, she did not think it was uncommon to place
someone in handcuffs after they pointed a gun at a Trooper. Once the police officers left,
Mr. O. went to the emergency room to seek medical attention.
In response, claimants additionally submit the deposition transcript of M.O. and Mr.
O.'s medical records. M.O. witnessed most of the events at the door and generally
confirmed the account given by his parents. As part of the medical record, there are
pictures of the laceration to Mr. O.'s head and a different wound on his ankle. As a result
of the injuries he sustained from the Troopers, Mr. O. needed to replace his dental
implant and received ankle reconstruction surgery approximately 15 months after the
accident.

LAW AND ANALYSIS
The proponent of a motion for summary judgment bears the initial burden of
establishing the right to judgment as a matter of law by tendering sufficient evidence, in
admissible form, demonstrating the absence of material issues of fact from the case (see Matter of Eighth Jud. Dist.
Asbestos Litig., 33 NY3d 488, 496 [2019], citing Alvarez v Prospect
Hosp., 68 NY2d 320, 324 [1986]). On such motion, "the facts must be viewed in the
light most favorable to the non-moving party and every available inference must be
drawn" in favor of the non-moving party (Matter of Eigth Jud. Dist. Asbestos Litig., 33 NY3d 488 at
496 [internal quotation marks and citations omitted]). Once the moving party has
demonstrated its prima facie entitlement to summary judgment, the burden shifts to the
opposing party to demonstrate the existence of a triable issue of material fact (see Vega v Restani Constr.
Corp., 18 NY3d 499, 503 [2012], citing Alvarez, 68 NY2d at 324).
A. Negligence
Defendant correctly argues that where, as here, a
claimant's causes of action sound in false arrest or false imprisonment, the claimant is not
permitted to seek damages under a general negligence theory of liability (Moreland v State of New
York, 200 AD3d 1362, 1365 [3d Dept 2021], lv denied 38 NY3d 906
[2022]; Heath v State of New York, 229 AD2d 912, 912 [4th Dept 1996]).
Accordingly, defendant's motion for summary judgment to dismiss the claim of
negligence is granted.
B. Negligent Hiring, Retention, and Supervision
In general, "where an
employer is liable for the employee's negligence under a theory of respondeat superior,
the [claimant] may not proceed with a cause of action to recover damages for negligent
hiring and retention" (Tabchouri
v Hard Eight Rest. Co., LLC, 219 AD3d 528, 533 [2d Dept 2023] [internal
quotation marks and citation omitted]; see Junmei Zhang v City of New York, 198 AD3d 504, 505
[1st Dept 2021]). Here, as defendant acknowledges, it is responsible for the Troopers
actions under these circumstances because they were acting within the scope of [*3]their employment (see Kerzhner v G4S Govt. Solutions, Inc., 160 AD3d 505,
505 [1st Dept 2018]). Therefore, this cause of action must be dismissed and defendant's
motion for summary judgment to dismiss the claim for negligent hiring, retention, and
supervision is granted.
C. False Imprisonment/False Arrest
To establish a claim for false
imprisonment or false arrest,[FN1]
a claimant must establish "(1) the defendant intended to confine [them], (2) the
[claimant] was conscious of the confinement, (3) the [claimant] did not consent to the
confinement and (4) the confinement was not otherwise privileged" (Broughton v
State of New York, 37 NY2d 451, 456-457 [1975], cert denied 423 US 929
[1975]; see De Lourdes Torres v
Jones, 26 NY3d 742, 759 [2016]). With respect to privilege for a false
imprisonment/arrest claim, "an act of confinement is privileged if it stems from a lawful
arrest supported by probable cause" (De Lourdes Torres, 26 NY3d at 759). When
an arrest is made pursuant to a lawful warrant, a presumption arises that there is probable
cause to support the arrest (see
Mahoney v State of New York, 147 AD3d 1289, 1291 [3d Dept 2017], lv
denied 30 NY3d 906 [2017]; Martinez v City of New York, 153 AD3d 803, 806 [2d
Dept 2017]). In contrast, when an arrest occurs in the absence of a warrant, "the
presumption arises that such an arrest . . . [is] unlawful" (Broughton, 37 NY2d at
458) and defendant must rebut this presumption by a showing of probable cause (see Moulton v State of New
York, 114 AD3d 115, 120 [3d Dept 2013]; Holland v City of Poughkeepsie, 90 AD3d 841, 845 [2d
Dept 2011]).
Probable cause is evaluated under the totality of the circumstances and can be
demonstrated by "such facts and circumstances as would lead a reasonably prudent
person in like circumstances to believe [claimant] guilty"; although it does not require
proof beyond a reasonable doubt, there must be "information sufficient to support a
reasonable belief that an offense has been or is being committed by the suspected
individual" (De Lourdes Torres, 26 NY3d at 759 [internal quotation marks and
citations omitted]; see Colon v City of New York, 60 NY2d 78, 82 [1983]).
Probable cause must exist at the time of the arrest; however, "evidence of a subsequent
arraignment or indictment is admissible as some proof of the presence of probable cause"
(Broughton, 37 NY2d at 458). By the same token, "evidence of a subsequent
dismissal, acquittal or reversal on appeal would also be admissible to refute the
affirmative defense of justification" (id.). A motion for summary judgment will
be denied and the question of probable cause will be left to the finder of fact "[w]here
there is conflicting evidence concerning the existence of probable cause to arrest the
[claimant], from which reasonable persons might draw different inferences" (Mendez v City of New York,
137 AD3d 468, 470 [1st Dept 2016], citing Parkin v Cornell Univ., 78
NY2d 523, 529 [1991]).
Here, there is no real dispute with respect to the first three elements of a false
imprisonment or false arrest claim—the Troopers intended to confine Mr. O., he
was conscious of the confinement, and he did not consent to it. The only disagreement
among the parties is whether the arrest was privileged, which rests on whether it was
supported by probable cause. In general, the weight of authority suggests a finding of
probable cause requires an arrest for a cognizable offense (see e.g. Flavin v City of New
York, 171 AD3d 633, 634 [1st Dept 2019] [plaintiff arrested for sale of drugs];
Holland v City of
Poughkeepsie, 90 AD3d 841, 845-846 [2d Dept 2011] [plaintiff charged with
disorderly conduct]; Quigley v City of Auburn, 267 AD2d [*4]978, 979 [4th Dept 1999] [probable cause plaintiff had
committed menacing in the second degree]). There are some cases where the presence of
a firearm provides probable cause for an arrest. However, those cases concerned arrests
that were made in public, often after witnesses had called the police, and where it
appears—whether or not explicitly stated—that there was probable cause to
arrest for criminal possession of a weapon (see Mendez v City of New York, 137 AD3d 468, 470 [1st
Dept 2016]; Grimes v City of
New York, 106 AD3d 441, 441 [1st Dept 2013]; Lorensen v State of New
York, 249 AD2d 762, 763-764 [3d Dept 1998], lv denied 92 NY2d 807
[1998]). Notably, defendant does not allege that the police had probable cause to arrest
Mr. O. for criminal possession of a weapon and instead only alleges that there may be
probable cause for menacing a police officer. Given this background, this Court does not
share defendant's view that the presence of a gun alone is sufficient to provide the police
with probable cause to arrest, in the absence of a specific criminal offense. Therefore,
this Court's assessment turns on whether there was probable cause to arrest Mr. O. for
menacing a police officer.
To be guilty of menacing a police officer, a person must "intentionally place[] or
attempt[] to place a police officer . . . in reasonable fear of physical injury, serious
physical injury or death by displaying a deadly weapon . . . whether operable or not,
where such officer was in the course of performing [their] official duties and the [person]
knew or reasonably should have known that such victim was a police officer" (Penal Law
§ 120.18). Viewing the evidence in the light most favorable to claimants, there is a
clear factual discrepancy concerning whether Mr. O. knew or reasonably should have
known that he aimed his gun at a police officer. Accepting claimants' testimony as true,
there is evidence that the Troopers did not ring the doorbell or announce their presence
and thereby gave claimants no reason to believe that the Troopers were at their door.
Additionally, Mr. O.'s actions—putting the gun away once he learned that the
Troopers were at his door and reemerging from the house with his hands above his
head—are consistent with the theory that Mr. O. did not initially know the
Troopers were there and may have been sufficient to alert the Troopers to the fact that he
was not aware of who they were. The foregoing, combined with the unusual hour of the
Troopers visit, creates a question of fact about whether the Troopers had probable cause
for the arrest (see Idelfonso v
City of New York, 187 AD3d 576, 577 [1st Dept 2020]; Mendez, 137
AD3d at 470; Holland, 90 AD3d at 845-846), and therefore the evidence is
insufficient, at this juncture, to rebut the presumption that the warrantless arrest was
unlawful (see Shaw v City of
Rochester, 200 AD3d 1551, 1552 [4th Dept 2021], appeal dismissed 38
NY3d 1181 [2022]). Similarly, the existence of triable questions of fact with respect to
probable cause precludes an award of summary judgment on the ground of qualified
immunity (see Ballinger v City
of Mount Vernon, 233 AD3d 736, 738-739 [2d Dept 2024]; Macareno v City of New York,
187 AD3d 1164, 1166 [2d Dept 2020]; Murray v City of New York, 154 AD3d 591, 592 [1st Dept
2017]). Therefore, defendant's motion for summary judgment is denied with respect to
the false arrest and false imprisonment claim.
D. Assault, Battery, and Excessive Force
A claim that a police officer
used excessive force in conducting an arrest is "analyzed under the Fourth Amendment
and its standard is objective reasonableness" (Holland, 90 AD3d at 844 [internal
quotation marks and citation omitted]; see Shirvanion v State of New York, 64 AD3d 1113, 1114
[3d Dept 2009]). Reasonableness "must be judged from the perspective of a reasonable
officer on the scene and depends on the facts in the particular case" (Relf v City of Troy, 169 AD3d
1223, 1224 [3d Dept 2019] [internal quotation marks and citation omitted]; see
[*5]Holland, 90 AD3d at 844). Whether there was
probable cause for the arrest does not bar a cause of action for use of excessive force
(see Tsachalis v City of Mount Vernon, 293 AD2d 525, 526 [2d Dept 2002];
Bennett v New York City Hous. Auth., 245 AD2d 254, 255 [2d Dept 1997]). The
question of whether the use of force was reasonable is "intensely factual" and therefore
"generally best left for a jury to decide" (Relf, 169 AD3d at 1224 [internal
quotation marks and citation marks omitted]).
A battery is "the unjustified touching of another person, without that person's
consent, with the intent to cause a bodily contact that a reasonable person would find
offensive," whereas "assault involves putting a person in fear of a battery" (Rivera v State of New York,
34 NY3d 383, 389 [2019] [internal quotation marks and citation omitted]; see Macareno v City of New
York, 187 AD3d 1164, 1167 [2d Dept 2020]). If an arrest is lawful, "intentional
contact with the arrested person does not constitute assault and battery, provided such
force is reasonable" (Fischetti v
City of New York, 199 AD3d 891, 893 [2d Dept 2021]). However, "[a] claim
predicated on assault and battery may be based upon contact during an unlawful arrest"
(Macareno v City of New
York, 187 AD3d 1164, 1167 [2d Dept 2020]; accord Mac v County of
Suffolk, 233 AD3d 850, 853-854 [2d Dept 2024]).
On the excessive force claim, defendant established that the Troopers were required
to use a degree of force while taking Mr. O. into custody. Both Troopers testified that
Mr. O. resisted arrest and he can be clearly seen in the camera footage pulling his arms
apart as he is being handcuffed. Although Mr. O. stated that he pulled his hands apart
because he felt a sharp pain in his neck and shoulder, the Troopers could not have known
that was the reason for him apparently resisting arrest. However, there is a question of
fact in the record about whether the force used to ultimately handcuff Mr.
O.—which involved both Troopers tackling him the ground and causing injuries
to both his head and ankle such that the later required reconstructive surgery—was
objectively reasonable (see
Murray v City of New York, 154 AD3d 591, 592 [1st Dept 2017]; Brown v Hoffman, 122 AD3d
1149, 1153-1154 [3d Dept 2014]). Therefore, the motion for summary judgment
with respect to the excessive force claim is denied.
As for the assault and battery claims, whether the arrest is lawful is connected to the
question of whether there is probable cause for the arrest. Because there are triable issues
of fact as to whether there was probable cause for the arrest, summary judgment is
precluded on the assault and battery claims (see Luers v City of New York, 205 AD3d 898, 900 [2d
Dept 2022]; see also Wyllie v
District Attorney of County of Kings, 2 AD3d 714, 718-719 [2d Dept 2003]). In
any event, even if the arrest were lawful, the motion for summary judgment to dismiss
these claims would still be denied because there are questions of fact, as discussed above,
as to whether the force used was reasonable.

CONCLUSION
Based upon the foregoing, defendant's motion for summary judgment to dismiss the
claim is granted with respect to the negligence and negligent hiring, retention, and
supervision claims and denied with respect to the false arrest/false imprisonment,
excessive force, and assault and battery claims. The Court will set this matter down for a
trial on the issue of liability as soon as reasonably practicable. This constitutes the
Decision and Order of this Court.
Saratoga Springs, New York
April 7, 2025
FRANCISCO CALDERON
Judge of the Court of Claims
The following papers were read and
considered by the Court:
1. Defendant's Notice of Motion, Attorney's Supporting
Affirmation, and Exhibits
2. Claimant's Attorney's Affirmation in Opposition to Motion and Exhibits
3. Defendant's Attorney's Reply Affirmation

Footnotes

Footnote 1: "False arrest and false
imprisonment are two different names for the same common-law tort" (Ballinger v City of Mount
Vernon, 233 AD3d 736, 737 [2d Dept 2024]).